## S02A0810. HYDE v. THE STATE.
### (572 SE2d 562)

HINES, Justice.

Hopton Hyde appeals his conviction for the malice murder of Sophia McDonald.[1] For the reasons that follow, we affirm.

Construed to support the verdicts, the evidence showed that McDonald and Hyde had a child together. As McDonald left work at 7:00 a.m. on April 10, 1998, she told a co-worker that she was going to see Hyde and get some money for the child. At 7:30 or 7:45 a.m., Hyde was on the sidewalk outside his home at 615 Rock Street, motioning for McDonald to turn the gold convertible she was driving; McDonald seemed to be indecisive about whether to do so. A few minutes later, the gold convertible was abutting the house at 615 Rock Street, in reverse gear, with the engine still running; it had suffered a minor collision in the rear. McDonald was lying in the middle of the street; she had been stabbed four times, and died of those wounds. Before she fell, she staggered and pleaded for help. A trail of blood led from her body to the door of the gold convertible. The nature of McDonald's wounds, including a defensive wound on her hand, and the appearance of the interior of the convertible, were consistent with McDonald having been stabbed in the convertible, and struggling against her attacker. A white hard hat was behind the passenger seat of the convertible. Hyde customarily wore a white hard hat, hooded grey sweatshirt, and tool belt.

A few minutes before McDonald was seen staggering in the street, Hyde woke his neighbor, Judy Hogan, and her boyfriend, Berry, and wanted Berry to get a hotel room for Hyde; Berry had pre-

---

[1] McDonald was killed on April 10, 1998. On May 7, 1999, a Fulton County grand jury indicted Hopton Hyde for malice murder, aggravated assault, felony murder in the commission of aggravated assault, and possession of a knife during the commission of a crime. Hyde was tried before a jury on January 25-31, 2000 and found guilty on all counts. On February 1, 2000, Hyde was sentenced as a recidivist to life in prison without the possibility of parole for malice murder; the court declared that all other charges merged with the malice murder for sentencing purposes. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Hyde moved for a new trial on February 21, 2000, and amended the motion on July 6, 2001. The motion was denied on August 9, 2001. On January 16, 2002, Hyde filed a motion for an out-of-time appeal; the motion was granted that same day and Hyde filed a notice of appeal. His appeal was docketed in this Court on February 14, 2002, and submitted for decision on April 8, 2002.

viously rented storage space for Hyde because Hyde lacked identification. An argument ensued, and Hyde left. Minutes later Hogan looked out the window and saw McDonald, bloody, stumble to the middle of the street and fall. Four to six weeks before the stabbing, Hyde had told Berry and Jackson, another neighbor, that he was going to kill his child's mother. Hyde also threatened McDonald on several occasions in the months before her death, and had physically abused her during their relationship.

Hyde spoke to Jackson by telephone an hour after the stabbing and asked what was going on. Jackson told him that "the police were out there." Hyde asked about "the girl," Jackson informed him that she was dead, and Hyde said: "Oh my God, what have I done." In a later telephone conversation with Berry, Hyde asked whether "the lady" was all right; Hyde began to cry when informed that she was dead. Neither Jackson nor Berry said anything to Hyde about the stabbing victim being a woman before he inquired. Hyde also asked Berry to say that McDonald died during a robbery.

Approximately two months after the stabbing, a red Acura that was titled and registered to McDonald was found in a parking lot; Hyde had regularly driven this car, and was seen driving it in the days after the stabbing. Among the items in the car were a bloodstained knife, a tool belt, and a hooded grey sweatshirt, with bloodstains. DNA testing showed the blood on the sweatshirt to be McDonald's.

Some months later, Hyde was arrested in Ohio. He was using an alias. A calendar he had with him had a notation for April 3, 1998: "The day of sorrow. I lost the love of my life." And for April 4, 1998: "My baby['s] mother was killed today." There was no notation for April 10, 1998. At trial, Hyde testified that when McDonald arrived at his home the morning of the stabbing, robbers from an earlier drug deal in which Hyde was involved appeared and stabbed McDonald before fleeing the scene.

1. The evidence was sufficient to enable a rational trier of fact to find Hyde guilty beyond a reasonable doubt of the crime for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hyde argues that the trial court should have suppressed all evidence taken from the red Acura, contending that the affidavit in support of the search warrant for the car was insufficient. First, it is questionable whether Hyde has any standing to challenge the warrant. As the State pointed out at the hearing on Hyde's motion to suppress, the Acura was not registered to Hyde, but to McDonald, and although Hyde may have had some permission in the past to use the vehicle, he had certainly not been given any such permission in the two months between McDonald's death and the application for

the warrant. The trial court noted the standing issue during argument, but did not specifically rule upon it, merely denying the motion after argument. If Hyde had no proprietary interest in the car, nor a legitimate expectation of privacy in it or its contents, he cannot challenge its search. *Burgeson v. State*, 267 Ga. 102, 105 (3) (b) (475 SE2d 580) (1996); *Gilbert v. State*, 245 Ga. App. 809 (539 SE2d 506) (2000). Second, the car was described in the affidavit as abandoned, and the constitutional protections as to search and seizure do not apply to an abandoned car. *Burgeson*, supra; *Williams v. State*, 171 Ga. App. 546, 547 (2) (320 SE2d 389) (1984). Finally, the affidavit stated that: the Acura was registered to McDonald; McDonald had gone to visit Hyde in a different vehicle; she was stabbed during that visit; Hyde fled the scene in the Acura; later abandoned the car; and Hyde may have left evidence in the car. That the Acura was registered to the victim, and that Hyde drove it after McDonald was killed, was relevant to the question of whether, under the totality of the circumstances, there was a fair probability that evidence of the crime would be found in the vehicle. See *DeYoung v. State*, 268 Ga. 780, 787 (7) (493 SE2d 157) (1997). Upon review, we conclude that the magistrate had a substantial basis for concluding that probable cause existed. Id.

3. The trial court suppressed the tangible evidence taken from the house at 615 Rock Street during a warrantless search. This included a rent receipt found in the apartment with Judy Hogan's name on it. Hyde contends that the court should have also suppressed any testimony of Hogan as "fruit of the poisonous tree." See *Duncan v. State*, 259 Ga. 278, 282 (2) (379 SE2d 507) (1989). However, the police's discovery of Hogan as a potential witness was inevitable; she lived across the street from 615 Rock Street, her window overlooked the spot where McDonald fell, she informed another neighbor that McDonald was lying in the street, and the police lawfully possessed this information. See *Davis v. State*, 262 Ga. 578, 583 (4) (422 SE2d 546) (1992). Compare *Taylor v. State*, 274 Ga. 269, 275 (3) (553 SE2d 598) (2001).

4. A juror testified during voir dire that a friend had been killed 24 years earlier. When the State asked if this experience would make him "unable or particularly uncomfortable" with serving on the jury, he responded: "I don't believe so." Hyde called to the juror's attention the contents and importance of the oath a juror takes, and asked: "Is that oath something you can take." The juror answered: "I believe so." Hyde sought further clarification, and the juror responded affirmatively to Hyde's question: "You just don't know what it is going to be like until you get there?" The trial court denied Hyde's motion to strike this juror for cause.

Whether to strike a juror for cause lies within the sound discretion of the trial court. *Garland v. State*, 263 Ga. 495, 496 (1) (435

SE2d 431) (1993). For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the court's charge upon the evidence. Id.; *McClain v. State*, 267 Ga. 378, 380 (1) (a) (477 SE2d 814) (1996). A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. *Waldrip v. State*, 267 Ga. 739, 745 (8) (c) (482 SE2d 299) (1997). A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference. *Kirkland v. State*, 271 Ga. 217, 219 (2) (518 SE2d 687) (1999).

The juror's responses during voir dire do not show that he held an opinion concerning the guilt or innocence of the defendant, and any doubt as to his own impartiality was sufficiently resolved. The court did not err in denying Hyde's motion to strike the juror for cause.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 12, 2002.

*Steven E. Phillips, Alicia H. Thomas*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Marc A. Mallon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General*, for appellee.