## A08A2351. DANIEL v. THE STATE.
(675 SE2d 472)

JOHNSON, Presiding Judge.

A jury found David Junior Daniel guilty of aggravated child molestation, three counts of child molestation, and one count of cruelty to children in the first degree. The jury found Daniel not guilty of an additional count of child molestation. Daniel appeals, alleging (1) the evidence was insufficient to support the jury's verdict, (2) the trial court erred by allowing a continuous witness violation, (3) the trial court erred by giving erroneous jury instructions, (4) the trial court unlawfully restricted his cross-examination of the victim, and (5) the trial court improperly denied his motion to strike a juror for cause. We find no harmful error and affirm Daniel's convictions.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence shows that following a "good touch/bad touch" presentation by a school counselor, the 11-year-old victim approached the counselor and told her that Daniel, her step-

[1] *Prudhomme v. State*, 285 Ga. App. 662, 663 (1) (647 SE2d 343) (2007).
[2] *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).
[3] *McMillian v. State*, 263 Ga. App. 782, 783-784 (1) (589 SE2d 335) (2003).

grandfather, had been touching her on her private parts and had been making her touch his private parts. According to the victim, Daniel would lay beside her, pull her pants and panties down, and touch her private parts. He would also pull her hand to his private parts. The victim told the counselor that this had happened more than once. The counselor reported the conversation to the Department of Family and Children Services ("DFCS").

The victim went home after she disclosed the abuse to her school counselor and repeated the allegation to her father. The victim's father told her he did not believe her and said, "Don't tell nobody." After the victim informed him she had already told the school counselor, he said, "Don't tell nobody else." When the victim returned home from school on the day DFCS became involved, her father slammed a door in her face, screamed at her for telling, and sent the victim to her room for the night.

Subsequently, Natasha Dedijer-Turner, an expert in forensic interviewing and the evaluation and treatment of victims of child sexual abuse, interviewed the victim at the Forsyth County Child Advocacy Center. The videotaped interview was played at trial and transcribed. In the interview, the victim disclosed that Daniel had touched her in bad places. She discussed one incident where Daniel had come into a bedroom, closed the door, and lay beside her on the bed. He pulled down both their pants and rubbed her on her "private and boobies." Then he made her touch his private, which was "straight." The victim told the interviewer that this had happened more than ten times, but she did not know exactly how many times. During a break in the interview, the victim drew a picture of Daniel's house with the words "Help me: said [the victim's name]" on the right side of the picture.

After Daniel was arrested, the victim's stepmother (Daniel's daughter) confronted the victim in the bathroom and screamed, "Are you happy now?" Subsequently, a private investigator hired by Daniel questioned the victim in the presence of her father and stepmother. The audio-taped interview was played for the jury and a transcription was provided. The investigator did not inform anyone that he would be taping the interview, and he hid the tape recorder in the pocket of his briefcase. In addition, the investigator admitted he had very little experience interviewing children and that he had not done any investigation into the facts of the case prior to the interview.

In the interview, the investigator asked the victim, "Do you feel like you want to say what did really happen now," and the victim responded, "He really did do it." After several minutes of talking and threatening the victim with the consequences of her actions, the investigator asked her, "And all I've got to have is for you to tell me

one way or the other if this really, really happened, yes or no," and the victim responded, "He really did do it." The interrogation continued, with the help of the victim's father and stepmother, and the victim insisted numerous more times that Daniel "did it." Finally, the victim recanted her allegation, and her father and stepmother told her how proud they were of her. The investigator then had the victim write a recantation which was signed by the investigator, the victim's father and the victim's stepmother. In the statement, every sentence was punctuated with a question mark.

The victim's father called the victim's mother and told her what had happened. He then gave the phone to the victim, who told her mother she had lied about Daniel. A few days later, the victim visited her mother and told her mother that Daniel really did molest her.

Six or seven months later, a DFCS caseworker visited the victim at school. The victim told the caseworker that Daniel had molested her, but that she changed her story because she did not want to make anyone mad at her and her father and stepmother thought she was making up the story. The victim specifically stated that her father, her stepmother, and the investigator made her change her story.

Subsequently, Amy Economopoulos, an expert in forensic interviewing and the evaluation and treatment of victims of child sexual abuse, interviewed the victim at the Cherokee County Child Advocacy Center. The videotaped interview was played at trial and transcribed. In the interview, the victim told the expert essentially the same facts as she described in her first interview; however, she also admitted that Daniel had licked her and tried to get her to lick his privates. Economopoulos testified that children frequently do not tell everything that happened to them at one time. She further testified that children recant for a variety of reasons, including pressure from other people, being told the abuser would go to jail, being told they are tearing the family apart, or being told the abuser is a good person, all of which the victim was told by Daniel's investigator. Children also recant when they are constantly asked questions over and over and want the questions to stop. Economopoulos gave several examples of incidents that could have led the victim to recant her story in this case.

The victim testified at trial, giving essentially the same account of events as she gave in her child advocacy interviews. Daniel's wife, the victim's step-grandmother, testified that she confronted the victim and asked her what Daniel had done. The victim told her step-grandmother that Daniel had touched and rubbed her breast and stomach.

Daniel requests this court to overrule a long line of cases holding that the uncorroborated testimony of a child victim is sufficient to

support a child molestation conviction.[4] We decline to do so, and we find the evidence in this case sufficient for a rational trier of fact to find Daniel guilty beyond a reasonable doubt of the charged offenses. While there may have been inconsistencies in the victim's statements, it was the jury's responsibility, as the trier of fact, to resolve any inconsistencies and judge the credibility of the witnesses. The jury was authorized to believe the victim's allegations and trial testimony, and to disbelieve any recantation.[5]

2. Daniel contends the trial court erred by allowing the victim's drawing of Daniel's home with the words "help me" written on the drawing to go into the jury room as an Exhibit. According to Daniel, this drawing constituted a continuing witness violation, and its inclusion in the jury room was harmful error requiring a new trial. In its order on Daniel's motion for new trial, the trial judge agreed that the use of this drawing in the jury room constituted a violation of the continuing witness rule, but found that the error was harmless. Pretermitting whether the drawing violated the continuing witness rule because of the testimonial nature of the words written by the victim,[6] we agree with the trial court that any error in allowing the drawing into the jury room was harmless.

We recognize that the victim's drawing and her cry for help likely drew sympathy from the jurors. However, "[q]ualified jurors under oath are presumed to follow the instructions of the trial court."[7] Here, the trial court instructed the jurors as follows regarding their feelings of sympathy:

> I charge you that the law does not permit jurors in arriving at your verdicts to be governed by sympathy or prejudice. You may not, therefore, render a verdict in this case based upon sympathy for any party or prejudice against any party. Any verdict that you return must be supported by

---

[4] See *Redman v. State*, 281 Ga. App. 605-606 (1) (636 SE2d 680) (2006); *Fiek v. State*, 266 Ga. App. 523, 527 (4) (597 SE2d 585) (2004); *Horne v. State*, 262 Ga. App. 604, 606-607 (2) (586 SE2d 13) (2003).

[5] See *Lopez v. State*, 291 Ga. App. 210, 212 (1) (661 SE2d 618) (2008) (inconsistencies between trial testimony and out-of-court statements were issues of credibility and played no part in this Court's sufficiency of the evidence review); *McKinney v. State*, 269 Ga. App. 12, 16 (2) (602 SE2d 904) (2004).

[6] Compare *Banks v. State*, 279 Ga. App. 57, 58-59 (1) (630 SE2d 571) (2006), disapproved on other grounds, *Patel v. State*, 282 Ga. 412, 415 (2) (651 SE2d 55) (2007); *Bryant v. State*, 249 Ga. App. 383, 384-385 (3) (547 SE2d 721) (2001); *Gabbard v. State*, 233 Ga. App. 122, 124 (3) (503 SE2d 347) (1998).

[7] (Citation and punctuation omitted.) *Holmes v. State*, 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001).

the evidence produced at trial without in any way being affected by either sympathy or prejudice.[8]

Even if the jurors had felt sympathy for the victim because of the written words on the drawing, they would not have been entitled to convict Daniel as to any charge based solely on this sympathy.

In addition, the statement on the drawing is not a substantive statement regarding the facts of the case that the jury could use to enhance the state's case or satisfy any element of the charged offenses. The victim's factual account and details of the crimes were not allowed to be re-read or heard again in the jury room. And the statement complained of here contains no factual details that could cause the jury to place undue emphasis on the victim's testimony.

Most importantly, "harm as well as error must be shown to warrant a reversal,"[9] and Daniel has failed to show, given the testimony at trial, that it is "highly probable"[10] that any error in allowing the words on the drawing to go to the jury room contributed to the judgment. The victim in this case testified in detail concerning the sexual acts performed on her by Daniel. The victim reported the abuse to a school counselor, DFCS workers, two child advocacy interviewers, and others, all of whom corroborated the child's testimony. The alleged error was harmless under the circumstances of this case.

3. Daniel contends the trial court gave an erroneous jury instruction concerning the uncorroborated testimony of a child victim. The charge at issue stated as follows:

> There is no requirement that the testimony of the alleged victim alleging child molestation be corroborated. If you find that all the essential elements of the crime of child molestation have been proven from the testimony of the child alleging molestation, such testimony, standing alone, would be sufficient to authorize a conviction.

According to Daniel, this charge improperly bolstered the child victim's testimony and ultimately reduced the state's burden of proof. We disagree.

---

[8] (Punctuation omitted.)

[9] (Citation and punctuation omitted.) *Banks*, supra at 59 (1).

[10] (Punctuation omitted.) *Robinson v. State*, 265 Ga. App. 481, 482 (1) (594 SE2d 696) (2004).

518

When reviewing an allegedly erroneous jury charge, this Court applies a "plain legal error" standard of review.[11] A jury charge must be considered as a whole and its parts read in conjunction with one another.[12]

> Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence.[13]

Here, the charge complained of is a correct statement of the law, and we have previously approved nearly identical charges in cases where it was accompanied by instructions regarding the burden of proof.[14]

The record shows that the charge complained of included a statement that the victim's testimony would be sufficient "[i]f you find that all the essential elements of the crime of child molestation have been proven from the testimony of the child alleging molestation." In addition, the trial court included multiple charges regarding the state's burden of proof, including charges that the state must prove each essential element of the crime beyond a reasonable doubt, that the burden of proof rests with the state and never shifts to the defendant, and that facts and circumstances which merely place a grave suspicion on the defendant are not sufficient to authorize a conviction. After reviewing the charges as a whole, we are satisfied that the jury was not misled or confused by the charge. The trial court did not err in denying Daniel's motion for new trial on this ground.

4. Daniel asserts the trial court erred in charging the jury, "You may consider outcry statements made by a child as corroborative evidence." According to Daniel, this charge highlighted outcry statements as corroborative evidence while remaining silent as to impeachment, prior inconsistent statements, and recantations. However, the trial court fully charged the jury on all aspects of impeachment, including prior inconsistent statements and prior contradictory statements. And, Daniel did not request a jury charge on recantation. Therefore, he cannot complain that the trial court erred in failing to give such a charge.[15] Moreover, the trial court's charge on

---

[11] (Punctuation omitted.) *White v. State*, 291 Ga. App. 249, 251 (661 SE2d 865) (2008).

[12] Id.

[13] (Citation and punctuation omitted.) Id.

[14] See *Goldey v. State*, 289 Ga. App. 198, 201 (2) (d) (656 SE2d 549) (2008); *Jones v. State*, 240 Ga. App. 484, 486-487 (3) (523 SE2d 73) (1999).

[15] See *Davenport v. State*, 283 Ga. 171, 172 (3) (656 SE2d 844) (2008).

the principle of contradictory statements more than sufficiently instructed the jury how to properly consider a recantation.

Contrary to Daniel's assertion, the charge is not a judicial comment on the evidence. The jury charges, read as a whole, properly informed the jurors that corroboration is not required but if the jurors had concerns they could look to the victim's outcry statements for corroboration.[16] After reviewing the charges as a whole, we are satisfied that the jury was not misled or confused by the charge.[17] The trial court did not err in denying Daniel's motion for new trial on this ground.

5. Daniel contends the trial court wrongfully restricted his cross-examination of the victim. Specifically, Daniel sought to introduce evidence that the 11-year-old victim allegedly had a MySpace profile page that listed her age as 17 years old and her occupation as an Atlanta Falcons' cheerleader. According to Daniel, the evidence was admissible because the age of the victim is an essential element of the crime of child molestation, and he should have been permitted to introduce evidence of the victim's prior inconsistent statements as to her age to impeach her credibility. Daniel also argues that the state opened the door to these prior inconsistent statements when the victim testified at trial.

"The admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court whose decision will not be disturbed on appeal absent a clear abuse of discretion."[18] "The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct."[19]

Clearly, the victim's age was not at issue in this case. Daniel, the victim's step-grandfather, did not dispute the victim's age or request a directed verdict regarding the failure of the state to prove the victim's age. Nor was the fact that the victim had previously stated she was an Atlanta Falcons' cheerleader relevant. The trial court properly ruled that Daniel was merely attempting to "end-run around the prohibition on the admission of prior bad acts" and impeach the victim "about an immaterial issue." "[A] victim's character is rarely relevant for any purpose in a criminal trial. While a defendant is entitled to effective cross-examination, he is not

---

[16] See *Turner v. State*, 223 Ga. App. 448, 449 (1) (b) (477 SE2d 847) (1996) (victim's testimony was corroborated by evidence of her outcry to her grandmother).

[17] See *White*, supra at 251-252.

[18] (Citations and punctuation omitted.) *Holmes v. State*, 275 Ga. 853, 854 (3) (572 SE2d 569) (2002).

[19] OCGA § 24-2-2.

entitled to unfettered cross-examination, and the trial court has broad discretion in limiting its scope."[20] The trial court correctly prohibited Daniel from impeaching the victim using evidence of her MySpace profile, and the trial court did not err in denying Daniel's motion for new trial on this ground.

6. Daniel contends he was required to exercise one of his peremptory strikes on a juror after the trial court improperly denied his motion to disqualify her for cause. We find no error.

The record shows that when the state asked the juror sequestered questions, she indicated that she was a teacher who had a prior experience with one of her students being abused. In response to the state's questions about whether this experience would make it difficult for her to be fair and impartial, the juror stated, "Well, you know, because I'm in the kid business . . . I work with kids every day, so I don't know, you know." While the juror initially was unable to state that she could be fair and impartial, she subsequently stated she could be fair and impartial, but qualified her response by saying, "[b]ut ya'll [sic] still have to realize I teach, and I work with children . . . [t]hey're in my heart everyday. . . ."

During questioning by the defense, the juror stated she would try to be fair and impartial. When asked if the fact that she is a teacher would cause her any bias, her response was "[p]ossibly." But when asked if this bias would prevent her from rendering a fair and impartial verdict, the juror responded, "I don't think so." When specifically asked whether she could set aside her bias and be fair and impartial, the juror replied, "Yeah, I'd try to, I don't know, you know, working with children it's so hard to say totally yes, but I don't know."

The juror was then asked by the court whether she would tend to believe a child witness over any other witness, to which she answered, "[y]es, I think so. That's exactly right." But then she interrupted, stating, "Oh, no, I'm sorry. . . . No, I wouldn't, I'm sorry. I thought you said something else." The following inquiry then occurred:

> COURT: That's really what it comes down to. I mean, are you going to give more credibility to a child witness simply because the witness is a child? And then, or are you going to sympathize, even if the Court were to charge you that you can't base your verdict on sympathy for or against either party, would you have a problem following the Court's instruction? I guess there's two questions in that.

---

[20] (Citations omitted.) *Allen v. State*, 275 Ga. 64, 68 (3) (561 SE2d 397) (2002).

JUROR: I would have a lot of sympathy toward the child. Yes.

COURT: Okay. Would you, so would you be unable to follow the Court's instruction that tells you you cannot base your verdict on sympathy for the —

JUROR: (Interposing) Yeah, I would have a hard time with that. Yeah.

During additional voir dire by the state, the following colloquy occurred:

STATE: The problem is this. And I understand, sympathy is one thing. The question is, are you going to find someone guilty because you feel sorry for a child? Or are you going to wait? Are you going to hear the evidence and make your decision based on the evidence? That's the bottom line question. I mean, does it not matter to you what the evidence is; if you felt bad for the child, would you find the defendant guilty?

JUROR: Absolutely.

STATE: You would find him guilty if you felt bad for her, and it doesn't really matter what the evidence is; that's what I'm asking you? Because when we talk about sympathy, you can feel bad for a child. But if you feel bad for her is that going to make it, is that going to decide your issue right there? You don't care what the other evidence is, if you feel sorry for her, you're done?

JUROR: No, I would listen to all the evidence.

STATE: Okay. And are you going to be able to make a decision or even judge this child's credibility if you feel sorry for her?

JUROR: I would be able to judge. I would be able to make a decision.

STATE: And would you be able to base your decision based solely on what you hear from the witness stand and follow the instruction of the Court?

JUROR: Yes. I could do that.

The trial court denied Daniel's motion to disqualify this teacher as a juror.

For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based

522

upon the evidence and the court's charge upon the evidence.[21]

The trial court is vested with broad discretion when considering challenges for cause, and the court is not required to excuse a potential juror where the juror indicates that she will "try" to decide the case based upon the court's instructions and evidence.[22] It is also not an abuse of discretion to seat a juror who questions her ability to set aside biases so long as the juror indicates she has no unalterable fixed prejudices.[23]

Here, while the juror honestly expressed concerns about her possible bias toward children, her doubt as to her own impartiality does not demand as a matter of law that she be excused for cause.[24] The juror stated that she would listen to all the evidence and follow the instructions from the court despite any sympathy she might feel for the child victim. There was no evidence that the juror had formed an opinion regarding guilt that was so fixed and definite that it would not be changed by the evidence or the trial court's instructions.[25] "A determination that a prospective juror is or is not biased is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference."[26] Considering the entirety of the juror's voir dire, the trial court did not abuse its discretion in refusing to strike the prospective juror for cause. We do note, however, that in discharging its duty to assure that the juror can be fair and impartial to both parties, the better practice is to err on the side of caution by excusing, rather than going to great lengths to rehabilitate, a juror who has consistently expressed concern that he or she may not be able to be fair because of sympathy for a victim or bias against a party.

7. Daniel filed a motion to strike the state's brief in this case on the ground that it was filed six days after the deadline. Since the late filing did not prejudice Daniel or hinder this Court from entering an opinion in the case, we deny Daniel's motion to strike.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

---

[21] (Citations omitted.) *Hyde v. State*, 275 Ga. 693, 696 (4) (572 SE2d 562) (2002).

[22] *Roberts v. State*, 276 Ga. 258, 259-260 (2) (577 SE2d 580) (2003).

[23] *Anderson v. State*, 276 Ga. 389, 390 (2) (578 SE2d 890) (2003).

[24] See id.; *Roberts*, supra at 259 (2).

[25] See *Anderson*, supra; *Roberts*, supra at 260 (2).

[26] (Citations and punctuation omitted.) *Anderson*, supra.

DECIDED FEBRUARY 17, 2009 —
RECONSIDERATION DENIED MARCH 10, 2009 — 

*McFarland & McFarland, Robert P. McFarland, Jr.*, for appellant.

*Penny A. Penn, District Attorney, Sandra A. Partridge, Assistant District Attorney*, for appellee.