**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 20, 2014**

# In the Court of Appeals of Georgia

A13A1832. FAVORS v. THE STATE.

RAY, Judge.

Following a jury trial, Doniel Favors was convicted on three counts of aggravated cruelty to animals (OCGA § 16-12-4 (c)) and four counts of cruelty to animals (OCGA § 16-12-4 (b)).[1] He appeals from the denial of his motion for new trial, contending that the evidence was insufficient to support his convictions and that the trial court erred in denying his request to strike a juror for cause. He also contends that he had ineffective assistance of counsel. Finding no reversible error, we affirm.

---

[1] Favors had also been charged with two counts of dogfighting (OCGA § 16-12-37), and additional counts of aggravated cruelty to animals and cruelty to animals, but the jury deadlocked on those counts. The parties agreed to accept the verdict as to the counts on which the jury was able to reach a unanimous decision, and the trial court declared a mistrial as to the counts that were deadlocked. The State then filed a nolle prosequi on the deadlocked counts.

1. Favors argues that the evidence presented at trial was insufficient to support his convictions. We disagree.

> On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*[, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979)]. This same standard applies to our review of the trial court's denial of [Favors'] motion for new trial. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Footnotes omitted.) *Stephens v. State*, 247 Ga. App. 719, 719 (545 SE2d 325) (2001).

So viewed, the record shows that the Smyrna Police Department received a complaint from Cobb County Animal Control about possible dogfighting activities occurring at Favors' residence. Agent Andrew Grubb, a police officer assigned to the Marietta/Cobb/Smyrna Organized Crime Unit, and another agent went to the reported location and began surveillance of Favors' residence. While there, the agents observed Favors drive down his driveway, exit his vehicle, unlock a gate, drive his vehicle through, close the gate, and drive away. The agents then followed Favors, and

Agent Grubb was able to observe a large plastic animal container in the cargo area of Favors' vehicle.

The agents later entered upon the property adjacent to Favors' residence, with the adjacent property owner's consent, to continue their surveillance. While they were there, the agents were able to observe dogs (pit bulls) that were restrained with heavy logging chains in Favors' yard. Based on their observations, Agent Grubb sought and obtained a search warrant for Favors' residence.

In executing the search warrant, agents found five dogs on Favors' property. The dogs were separated from each other and restrained with heavy logging chains, preventing any contact or interaction between the dogs. The areas around the dogs were worn and had no vegetation, indicating that the dogs were chained for long periods of time. Some of the dogs had inadequate access to water. All of the dogs were very skinny, and most of the dogs had bite wounds and various signs of scarring on their bodies. The dogs that had open wounds did not appear to be receiving any medical treatment. Agent Grubb, who was qualified as an expert in dogfighting, testified that the conditions under which the dogs were kept were consistent with a dogfighting operation.

Inside the basement of the house, agents found a dogfighting pit with several tables, chairs, and couches set up around it. There was blood on the walls and carpet around the dogfighting pit, as well as bloody animal prints on the concrete floor. A cross-section of wood from one of the walls was sent for testing, and samples taken from this wood tested positive for the presence of dog blood. In the master bedroom of the house, agents found various documents relating to the dogs, including breeding documents, lineage records, and registration certificates. One pedigree certificate, from the American Dog Breeders Association, listed Favors as the owner of an American pit bull terrier. The agents also found photographs of Favors holding various pit bulls.

OCGA § 16-12-4 (b) provides that "[a] person commits the offense of cruelty to animals when he or she causes death or unjustifiable physical pain or suffering to any animal by an act, an omission, or willful neglect." Subsection (c) of this statute provides that "[a] person commits the offense of aggravated cruelty to animals when he or she knowingly and maliciously causes death or physical harm to an animal by rendering a part of such animal's body useless or by seriously disfiguring such animal."

On appeal, Favors does not challenge whether the dogs had been caused pain, suffering, and serious disfigurement. Rather, he argues that the evidence was insufficient to support his convictions because the State failed to establish that the dogs were actually his and that the State failed to prove that he had any connection to dogfighting. These arguments lack merit.

Ownership of the animal is not a required element of these offenses. See OCGA § 16-12-4 (b) and (c). Furthermore, the evidence shows that Favors lived at the residence where the dogs were found, that the dogs were restrained with heavy chains, that the dogs were not cared for properly, that the dogs had suffered seriously disfiguring injuries consistent with dogfighting, that Favors had a dogfighting pit in his residence, and that dog blood was found in and around the dogfighting pit.[2] At a minimum, circumstantial evidence exists that Favors was connected to dogfighting.

Accordingly, we find that the evidence was sufficient to support his convictions. *Stephens*, supra at 720-721 (1).

---

[2] Also, Agent Grubb testified to seeing Favors with an animal transport container in his vehicle.

5

2. Favors contends that his trial counsel was ineffective for failing to object to State's Exhibit 8, which included a girl's book report on pit bulls.[3] We find no reversible error.

During Agent Grubb's testimony, the State asked him to describe the paperwork that the agents found in the master bedroom of Favors' residence. In response, he testified that the agents found several documents, papers, and breeding certificates related to the dogs. The prosecuting attorney then offered all of the papers and documents, collectively, as State's Exhibit 8. Without examining its contents, defense counsel stated that he had no objection to State's Exhibit 8 being tendered into evidence. However, the book report on pit bulls was also among the papers and documents contained in this exhibit.

During closing argument, the prosecuting attorney, over Favors' objection, read the following excerpt from the book report: "in the end I would like to say that, if you treat your puppy as if it were one of you, example, your best friend, sister or brother, you love the pit bull and it will love you too." The prosecuting attorney then argued, in reference to the condition of the dogs in this case, that

---

[3] Although the girl was not identified, the prosecuting attorney stated that he assumed it was Favors' daughter.

This is not how you treat a sister, brother or a friend. You don't chain them up outside in the heat and not water them. You don't not feed them to the point their ribs are showing. You don't put them in a pit to fight for your amusement and put chairs and tables around there so you can entertain other guests while you're doing it. The daughter had it right. The defendant clearly had it wrong.

Favors argues that trial counsel was ineffective because he failed to inspect the papers and documents contained in State's Exhibit 8 and to object to the inclusion of the book report. His argument fails.

In order to prevail on a claim for ineffective assistance, Favors

must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different.

(Citation and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by this Court. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). Furthermore, in reviewing the trial court's decision on an ineffective assistance claim, "we accept the trial court's factual findings and

7

credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation omitted.) Id.

Even if trial counsel rendered ineffective assistance by failing to inspect the contents of State's Exhibit 8, the excerpt from the book report had no direct bearing on Favors' guilt or innocence of the crimes for which he was charged. Rather, it was merely a recitation of a commonly held belief in our society - i.e., that if you love and care for a dog, it will love you back. We find it highly unlikely that the excerpt provided any insight regarding the ethical treatment of animals that the jury did not already have during the presentation of this case. Thus, even if the book report had been excluded from evidence, there is no reasonable probability that the result of the trial would have been different.

Accordingly, we conclude that Favors has failed to carry his burden to establish the prejudice necessary to prevail on his ineffectiveness claim. See *Pruitt*, supra; *Wright*, supra.

3. Favors contends that the trial court erred in failing to excuse a juror for cause. We disagree.

"The decision [whether] to strike a potential juror for cause lies within the sound discretion of the trial court and will not be set aside absent some manifest

8

abuse of that discretion." (Citation omitted.) *Abdullah v. State*, 284 Ga. 399, 400 (2) (667 SE2d 584) (2008). With regard to a decision not to strike a juror, there is no manifest abuse of discretion

> unless it is shown that the juror's opinion is so fixed and definite that he or she will be unable to set the opinion aside and decide the case based upon the evidence and the trial court's instructions. Neither a prospective juror's doubts as to his ability to be impartial nor his statement that he will "try" to set aside any preconceived notions mandate as a matter of law that the juror be excused for cause.

(Punctuation and footnotes omitted.) *Miller v. State*, 275 Ga. 730, 736 (5) (571 SE2d 788) (2002).

During individual voir dire, prospective juror Duckett initially stated that he did not think that he would be able to be an impartial juror because he had a "bad feeling" about the nature of the case. Duckett later stated that he understood that the indictment contained only allegations and that State had the burden of proving its case. When asked if he could listen to the evidence before determining Favors' culpability, he responded "I mean, sure." He acknowledged that his decision on whether the State met its burden of proof should be based upon the evidence and the trial court's instructions, and he further acknowledged that he had not formed an

9

opinion as to Favors' guilt or innocence. Lastly, Duckett confirmed that any bias he may have as to the type of crime, the type of activity, or the defendant would only come into play "[i]f he actually did it."

The transcript of voir dire establishes that Duckett did not have an opinion regarding Favors' guilt or innocence that was "so fixed and definite that he . . . [would] be unable to set the opinion aside and decide the case based upon the evidence and the trial court's instructions." (Footnote omitted.) Id. Accordingly, the trial court did not abuse its discretion in denying Favors' motion to strike the juror for cause.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*