**SECOND DIVISION
MILLER, P. J.,
ANDREWS, and SELF, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 7, 2018**

# In the Court of Appeals of Georgia

A18A0645. BUDHANI v. THE STATE.

MILLER, Presiding Judge.

Mahemood Budhani was convicted of three counts of unlawful sale of a schedule 1 controlled substance, known as XLR11, in violation of OCGA § 16-13-30 (b) (2014) for sales occurring on three separate dates, and one count of unlawful possession with intent to distribute of the Schedule 1 controlled substance XLR11 in violation of OCGA § 16-13-30 (b) (2014). Budhani appeals, alleging that (1) the indictment against him was void for failure to allege essential elements of the crimes; (2) the trial court erred in denying his motion to dismiss a juror for cause; and (3) the trial court erred in admitting his custodial statement upon finding that it was voluntarily given. For the following reasons, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence shows that between October and December 2014, police used a confidential informant to conduct three controlled buys of XLR11, a synthetic form of marijuana, from Budhani. In December, police executed a search warrant for the gas station where Budhani worked and where the sales took place, and they located additional packages of synthetic marijuana. Defendant admits all of the packages obtained during the controlled buys and the search contain XLR11. Each of the packages has a label that reads that the contents are "not for human consumption."

After his arrest, Budhani was taken to the police station where he was given a *Miranda*[2] warning and questioned by police. The interrogation was recorded. Officers indicated that Budhani made no incriminating statements prior to the interrogation being taped. During the interrogation, Budhani signed a waiver indicating that he had not been promised anything in exchange for talking to the police. Officers asked Budhani about how long he had been selling synthetic marijuana, and he initially indicated that it had only been two to three weeks. Officers pressed Budhani that he was not being truthful, stating "You want to help yourself, I'm giving you an

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 5660) (1979).

[2] *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LEd2d 694) (1966).

opportunity to . . . " They further told Budhani that even if he confessed to selling drugs for a longer time, they would not charge Budhani with additional crimes. Officers clearly advised Budhani that they could not make him any promises, or give him a hint that he would not be in trouble or would be in less trouble if he was truthful, because that determination was up to the district attorney. The officers did state that, if Budhani was truthful with them, they would communicate that fact to the district attorney. Ultimately, Budhani stated that he had been selling drugs for no longer than two months.

Budhani moved to suppress the custodial statement on the grounds that it was involuntary because he had been told by police that if he cooperated he could benefit from a reduction of charges, elimination of charges, or a reduced sentence. The trial court denied the motion to suppress after finding that the custodial statement was voluntary because it was given without the hope of benefit.

Following a jury trial, Budhani was convicted of all four charges, and he now appeals.

1. Budhani alleges that his indictment was void for failure to allege a material element of the crimes. We disagree.

3

Budhani filed a general demurrer in this case, which the trial court denied. "A general demurrer challenges the validity of an indictment by asserting that the substance of the indictment is legally insufficient to charge any crime." (Citation and footnote omitted.) *State v. Wilson*, 318 Ga. App. 88, 91 (1) (732 SE2d 330) (2012). "[T]his Court reviews a trial court's ruling on a general or special demurrer de novo in order to determine whether the allegations in the indictment are legally sufficient." (Citation, punctuation, and footnote omitted.) *Smith v. State*, 340 Ga. App. 457, 459 (797 SE2d 679) (2017).

> [A]n indictment is void to the extent that it fails to allege all the essential elements of the crime or crimes charged. That principle is founded upon the constitutional guaranty of due process. Due process of law requires that the indictment on which a defendant is convicted contain all the essential elements of the crime . . . Unless every essential element of a crime is stated in an indictment, it is impossible to ensure that the grand jury found probable cause to indict. An indictment that alleges the accused violated a certain statute, without more, would simply state a legal conclusion regarding guilt, and not an allegation of facts from which the grand jury determined probable cause of guilt was shown. Likewise, it would not allege sufficient facts from which a trial jury could determine guilt if those facts are shown at trial. A valid indictment uses the language of the statute, including the essential elements of the offense, and is sufficiently definite to advise the accused of what he must be prepared to confront. In sum, to withstand a general demurrer,

4

an indictment must: (1) recite the language of the statute that sets out all the elements of the offense charged, or (2) allege the facts necessary to establish violation of a criminal statute. If either of these requisites is met, then the accused cannot admit the allegations of the indictment and yet be not guilty of the crime charged.

(Citations and punctuation omitted.) *Jackson v. State*, 301 Ga. 137, 139-141 (1) (800 SE2d 356) (2017).

Here, Count 1 of the indictment charged Budhani with:

. . . SALE OF A SCHEDULE I CONTROLLED SUBSTANCE for that the said accused on the 18th day of October, 2014, said date being material, in Newton County, Georgia, then and there: did unlawfully sell. . . (XLR11), a Schedule I Controlled Substanc *(sic)*, in violation of OCGA § 16-13-30 (b) . . .

Counts 2 and 3 of the indictment are identical except that they contain different dates of sale.[3]

Count 4 charged Budhani with:

. . . POSSESSION OF A SCHEDULE I CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE for that the said accused on the 12th day of December, 2014, in Newton County, Georgia, then and there: did unlawfully possess with intent to distribute. . . (XLR11), a schedule I

---

[3] Specifically, October 24, 2014 and December 12, 2014.

controlled substance, in violation of OCGA § 16-13-30 (b), said act being separate and distinct from any other Count of this Indictment. . .

Budhani contends that the indictment is void because it fails to allege the inapplicability of certain exemptions. OCGA § 16-13-30 (b) (2014) provides:

> Except as authorized by this article, it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute *any controlled substance*.

(emphasis supplied.)

A schedule I controlled substance, as is relevant to this appeal, is defined as

. . .

> (12) Any of the following compounds, derivatives, their salts, isomers, or salts of isomers, halogen analogues, or homologues, *unless specifically utilized as part of the manufacturing process by a commercial industry of a substance or material not intended for human ingestion or consumption, as a prescription administered under medical supervision, or research at a recognized institution . . .*

> . . .

> (N) . . . (XLR11);

(Emphasis supplied.) OCGA § 16-13-25 (12) (N) (2014).

As an initial matter, we find that establishing that the XLR11 sold and possessed by Budhani meets the statutory definition of a "schedule I controlled substance" is an element of the offenses with which Budhani has been charged.[4] The indictment against Budhani did not explicitly allege that the XLR11 here was not "specifically utilized as part of the manufacturing process by a commercial industry of a substance or material not intended for human ingestion or consumption, as a prescription administered under medical supervision, or research at a recognized institution." See OCGA § 16-13-25 (12) (N) (2014). The question before this Court is whether this omission of the above mentioned language is fatal to the indictment. We find that it is not because the indictment "recite[s] a sufficient portion of the statute to set out all the elements of the offense for which [Budhani] was tried and convicted." See *Jackson*, supra, 301 Ga. at 142 (2).

---

[4] The State contends that these exemptions are affirmative defenses for which the defendant bears the burden of proof, but we are not persuaded. Not only does the statute fail to identify them as affirmative defenses, but the exemptions also do not go to the element of intent. See e.g. *Hicks v. State*, 287 Ga. 260, 261-262 (2) (695 SE2d 195) (2010) ("With a legal affirmative defense, the accused admits the elements of the crime, but seeks to justify, excuse, or mitigate by showing no criminal intent; all elements of the parts of the crime are admitted with the exception of the intent"); see also OCGA §§ 16-3-1 – 16-3-40.

Specifically, the indictment alleges that Budhani both possessed and sold "a schedule I controlled substance." The statutory definition of a schedule I controlled substance in 2014 excluded XLR11 that was "specifically utilized as part of the manufacturing process by a commercial industry of a substance or material not intended for human ingestion or consumption, as a prescription administered under medical supervision, or research at a recognized institution." OCGA § 16-13-25 (12) (N) (2014). Thus, in order for the XLR11 to even qualify as a "schedule I controlled substance," the exemptions could not have applied. In other words, the very definition of a "schedule I controlled substance" embodies an allegation that the exceptions were inapplicable. Consequently, although the indictment does not explicitly allege the inapplicability of the exemptions, it inherently does so by alleging that the substance possessed and sold by Budhani was, in fact, by definition, a "schedule I controlled substance."

Our reasoning here comports with the Supreme Court of Georgia's recent analysis in *Jackson*. The indictment here put Budhani on notice of the "factual allegations he must defend in court." See *Jackson*, supra, 301 Ga. at 140 (1). The indictment put Budhani on notice of the specific dates involved, his actions that constituted an alleged violation of OCGA § 16-13-30 (b) (2014), and that the State

8

alleged that the XLR11 he sold and possessed was a "schedule I controlled substance" as that term is defined by statute. Consequently, the due process concerns present in *Jackson* do not exist here and Budhani's indictment is not void.[5]

2. Budhani next argues that the trial court abused its discretion in denying his motion to strike a prospective juror for cause after the juror indicated that he was biased and the trial court was unable to rehabilitate him. We find no manifest abuse of discretion.

The trial court's denial of a motion to strike a juror for cause will not be set aside unless there has been a manifest abuse of the trial court's discretion. *Abdullah v. State*, 284 Ga. 399, 400 (2) (667 SE2d 584) (2008).

A defendant "is entitled to a full panel of *qualified* jurors." *Kirkland v. State*, 274 Ga. 778, 779 (2) (560 SE2d 6) (2002). Thus, jurors in a felony trial must answer certain questions, including whether they possess any bias or prejudice either in favor of or against the defendant. See OCGA § 15-12-164 (a). If a juror's answer to this

---

[5] In reaching its conclusion that the indictment was not void, the trial court relied on its interpretation of the meaning of the exemptions based on the punctuation used in the statute. The issue before us is not whether the evidence presented at trial was sufficient to establish that any of the exemptions applied, rather, the issue is whether the exemptions needed to be explicitly contained within the indictment for it to be valid.

9

question renders that juror incompetent, then "[that juror] shall be set aside for cause." OCGA § 15-12-164 (c).

> For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the court's charge upon the evidence. A prospective juror's doubt as to his or her own impartiality does not demand as a matter of law that he or she be excused for cause. A conclusion on an issue of juror bias is based on findings of demeanor and credibility which are peculiarly in the trial court's province, and those findings are to be given deference.

(Citations omitted.) *Hyde v. State*, 275 Ga. 693, 695 (4) (572 SE2d 562) (2002); see also *Brown v. State*, 243 Ga. App. 632, 633 (1) (534 SE2d 98) (2000) (same).

Here, during voir dire, one prospective juror indicated that he would be unable to serve as a juror because he had to attend his college classes the following week. After the trial court explained that this obligation would not impede his ability to serve because the trial would be completed by then, the prospective juror then indicated that his upbringing had caused him to be biased against some people on the basis of race. The trial court and the prospective juror then engaged in a dialogue about whether he could put forth his "best reasonable efforts" to be fair and impartial.

10

The prospective juror responded, "Yeah, I guess." The prospective juror continued to express reservations about his bias, though he never indicated that he had formed an opinion as to Budhani's guilt as a result of his race or that he definitely could not be fair and impartial in the case. After further questions, the trial court and the prospective juror engaged in this exchange:

> Court: Well, you won't know until you see the evidence. But the question is whether or not you keep your mind open to listen and wait until the evidence is presented. That's the question. You're not – you're not drawing a conclusion about Mr. Budhani simply because of his ethnicity. That's the point. You're not drawing a closed mind because of who you see he is. That's the question. Is that correct that you will listen? That's all we're asking whether you will or won't.

> Prospective Juror: Yeah.

Defense counsel moved to strike this prospective juror for cause, but the trial court denied the motion, finding that the prospective juror simply did not want to serve on the jury and was giving answers that would enable him to evade service. The trial court noted that the prospective juror smirked and smiled when answering questions. Defense counsel agreed that the prospective juror did not want to serve on

11

the jury and stated that the prejudice claim was likely made up. Defense counsel then used a peremptory strike to remove the prospective juror.[6]

Importantly, at no time did the prospective juror indicate that he had formed an opinion on Budhani's guilt or innocence "that was so fixed and definite that [he] would be unable to set the opinion aside and decide the case based upon the evidence." See *Ros v. State*, 279 Ga. 604, 606 (4) (619 SE2d 644) (2005). Further, "[n]either a prospective juror's doubts as to his ability to be impartial nor his statement that he will 'try' to set aside any preconceived notions mandate as a matter of law that the juror be excused for cause." (Citation omitted.) *Favors v. State*, 326 Ga. App. 373, 377 (3) (756 SE2d 612) (2014).

Moreover, the trial court made a credibility determination that the prospective juror's answers and demeanor showed that he was simply trying to avoid service rather than expressing a sincerely held bias – a conclusion with which defense counsel expressly agreed. Because the trial court is in the best position to evaluate the prospective juror's demeanor and credibility, and this Court should defer to the trial

---

[6] There is no harmless error test applicable to the failure to strike a prospective juror; thus, the fact that the defendant did not use all of his peremptory strikes is irrelevant to the analysis. See *Harris v. State*, 255 Ga. 464 (2) (339 SE2d 712) (1986).

court's findings, we cannot say that the trial court manifestly abused its discretion in this case. See *Hyde*, supra, 275 Ga. at 695 (4); *Brown*, supra, 243 Ga. App. at 633 (1).[7]

We certainly caution trial courts about being overzealous in attempts to rehabilitate jurors given the constitutional implications at stake. Here, given the prospective juror's claims of racial bias - whether sincere or fabricated - the better practice likely would have been to strike this prospective juror for cause. Nonetheless, we cannot say that the trial court manifestly abused its discretion such that it committed reversible error.

3. Lastly, Budhani contends that the trial court erred in finding that his custodial statement was voluntary and, thus, admissible. We disagree.

Under Georgia law, "[t]o make a confession admissible, it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." OCGA § 24-8-824. The term "slightest hope of benefit"

---

[7] This case is distinguishable from *Menefee v. State*, 270 Ga. 540, 541-542 (2) (512 SE2d 275) (1999) and *Ivey v. State*, 258 Ga. App. 587, 589-591 (2) (574 SE2d 663) (2002). In those cases, the trial court made no credibility determination based on the prospective juror's answers and demeanor that the claimed bias was simply an insincere attempt to avoid jury service.

refs to "promises related to reduced criminal punishment – a shorter sentence, lesser charges, or no charges at all." (Citation omitted.) *State v. Chulpayev*, 296 Ga. 764, 771 (2) (770 SE2d 808) (2015). This rule applies to any incriminating statements and is not limited to "confessions." *Vergara v. State*, 283 Ga. 175, 177 (1) (657 SE2d 863) (2008).

"It is the task of the trial court to determine whether a confession was voluntary, taking into account the totality of the circumstances. We will not disturb the trial court's factual and credibility determinations on appeal unless they are clearly erroneous." (Citation omitted.) *Jackson v. State*, 280 Ga. App. 716, 720 (2) (634 SE2d 846) (2006). "Further, in reviewing the denial of a motion to suppress, we consider all the evidence of record, including evidence introduced at trial." (Citation and footnote omitted.) *McDevitt v. State*, 286 Ga. App. 120 (648 SE2d 481) (2007).

We have held that "[m]erely telling a defendant that his or her cooperation will be made known to the prosecution does not constitute the 'hope of benefit' sufficient to render a statement inadmissible." (Citations omitted.) *Leigh v. State*, 223 Ga. App. 726, 727 (1) (478 SE2d 905) (1996); see also *Caldwell v. State*, 249 Ga. App. 885, 888 (3) (49 SE2d 449) (2001) (urging defendant to tell the truth does not make statement involuntary); *Lyles v. State*, 221 Ga. App. 560, 561 (1) (472 SE2d 132)

14

(1996) (detective telling defendant that he would let the district attorney know about cooperation and that it might result in reduced sentence when defendant signed a declaration that his statement was made without promise of hope or reward does not make statement involuntary).

Here, during the audio recorded portion of the custodial statement, Budhani was given a *Miranda* warning, executed a waiver of rights, and proceeded to discuss with officers his sale of synthetic marijuana. At no point during the audio recorded portion did the officers promise Budhani that the charges would be dropped or that his sentence would be reduced if he talked to them. Rather, they simply told him that they would not charge him with additional crimes if he were to admit to selling drugs for a longer period of time than he initially indicated. Indeed, they told him multiple times that they were unable to promise him anything regarding the outcome of his case, stating only that they could talk to the district attorney about what Budhani told them and the district attorney would have authority to decide how to handle Budhani's case.

During the motion to suppress hearing, Budhani's testimony varied as to what promises the police allegedly made. At various points he testified that he was told that if he was truthful there would be no charges , or no sentence , or a lesser sentence.

However, Budhani also admitted on cross-examination that he was never promised that there would be no charges against him and that he was only told that the officers would tell the district attorney that he cooperated. Moreover, Budhani signed a waiver agreeing that no promises were made and that his statement was voluntary.

On appeal, Budhani relies heavily on an answer provided by one of the interrogating officers during the suppression hearing to establish that he was promised a benefit prior to the recorded portion of the interrogation. When the officer was asked whether he explained to Budhani that he did not have to speak to officers, but that doing so could potentially benefit him in the case, the officer responded affirmatively. During questioning at the trial, however, the officer indicated that he had misunderstood the question being asked at the suppression hearing. He indicated that he thought he was being asked whether cooperating *could have benefitted* Budhani, not whether he told Budhani it would benefit him. He reiterated that he did not tell Budhani that cooperating could benefit him because any benefit would be determined by the district attorney.

Here, the trial court's decision to admit the custodial statement as voluntary was not clearly erroneous. The only evidence that Budhani was promised any hope of benefit was Budhani's own conflicting statements, which were belied by the audio

16

recording of the interrogation and the waiver of rights Budhani executed. To the extent the officer seemed to initially indicate that promises were made prior to the audio recording, he clarified his testimony at trial. See *Gray v. State*, 207 Ga. App. 648, 650 (2) (428 SE2d 663) (1993) ("we may consider all relevant evidence of record, wherever located, including evidence introduced at a suppression hearing and that introduced at trial") (citation omitted). On these facts, the trial court did not clearly err in its factual findings and credibility determinations in ruling that the custodial statement was voluntarily given and, thus, admissible.

*Judgment affirmed. Andrews and Self, JJ., concur.*