36553. STRONG v. THE STATE.

NICHOLS, Justice.

Dr. Strong was indicted for fourteen counts of unlawfully prescribing a controlled substance for other than "a legitimate medical purpose." His application for interlocutory appeal was granted. Some of his contentions patently are without merit and will be adjudicated in summary form. Others merit serious consideration but similarly lack merit. Additional facts will be set forth as required.

1. Since Dr. Strong was indicted by a grand jury he is not entitled to a preliminary hearing. *Natson v. State,* 242 Ga. 618, 622 (3) (250 SE2d 420) (1978), cert. den. 441 U. S. 925 (1979); *State v. Middlebrooks,* 236 Ga. 52 (222 SE2d 343) (1976).

2. Dr. Strong filed a notice to produce seeking the names, addresses, telephone numbers and whereabouts of any informers, and a Brady motion seeking the true name and the address of an undercover agent who used the alias "Jack Myers." The state denies the use of an informant and has agreed to reveal the true name of "Jack Myers." The requirements of Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215), are satisfied by an *in camera* inspection of the State's file and disclosure of exculpatory material. *Payne v. State,* 233 Ga. 294, 296 (1) (210 SE2d 775) (1974). Although the better practice would have been for the state to have furnished known addresses and telephone numbers of the state's witnesses along with the list of the witnesses provided for in Code Ann. § 27-1403, this court has held that addresses and telephone numbers of the state's witnesses need not be furnished. *Roberts v. State,* 243 Ga. 604, 606 (4) (a) (255 SE2d 689) (1979), and cases cited therein.

3. His enumeration of error complaining of denial of his motion for a bill of particulars has not been supported by argument or citation of authority and, accordingly, is deemed abandoned. Rule 45, Rules of the Supreme Court of Georgia. Furthermore, it is without merit. *Megar v. State,* 144 Ga. App. 564 (3) (241 SE2d 447) (1978).

4. Likewise, his enumeration of error relating to denial of his motion for dismissal based on pre-arrest delay is deemed abandoned

because he has presented no argument or citation of authority in support of it. Id. This enumeration of error is without merit because no "actual prejudice" resulting from the brief interval between investigation and arrest has been shown. *State v. Madden,* 242 Ga. 637 (250 SE2d 484) (1978).

5. Dr. Strong moved to dismiss the indictment on the basis of prosecutorial misconduct in that the GBI instigated newspaper, radio and television coverage of his arrest and disclosed to the news media alleged "evidence" uncovered in their investigation; and that the GBI and district attorney made highly derogatory public comments about him. This enumeration of error poses a serious question (United States v. Sweig, 316 FSupp. 1148, 1153 (SDNY 1970)) but this court affirms for the reasons stated in this division of the opinion.

At least two categories of prejudicial publicity have been recognized. In the first category of cases the defense contends that the news media has created a carnival atmosphere surrounding the proceedings, thereby posturing a confrontation between rights of free speech or free press and the right of the defendant to due process and a fair trial. Murphy v. Florida, 421 U. S. 794 (95 SC 2031, 44 LE2d 589) (1975); Sheppard v. Maxwell, 384 U. S. 333 (86 SC 1507, 16 LE2d 600) (1966), and Estes v. Texas, 381 U. S. 532 (85 SC 1628, 14 LE2d 543) (1965). The second category are those cases in which the defense wishes to establish that the investigating or prosecuting officers have orchestrated, choreographed and staged a media event for the purpose of corralling the minds of the grand or petit jurors and either stampeding or leading the jurors into the indictment or conviction being sought by the government. United States v. Milanovich, 303 F2d 626 (4th Cir. 1962); Massicot v. United States, 254 F2d 58 (5th Cir. 1958) and United States v. Mitchell, 372 FSupp. 1239 (SDNY 1973).

Dr. Strong concedes that Professor Moore remains correct in his statement that no reported decision indicates that any indictment thus far has been dismissed on the ground of prejudicial pre-indictment publicity. 8 Moore's Federal Practice, ¶ 6.03[4]. He contends, however, that no defendant before him ever has proven that the government deliberately staged an arrest as a media event. Accordingly, he asserts that this court should be the first to grant this novel remedy. He is correct in his factual assertions but this court disagrees with him on the law.

The facts are not controverted. The transcript of the motion hearing established that on the morning following Dr. Strong's arrest, the *Atlanta Constitution* reported: "The GBI notified newspapers and television stations in advance of Tuesday's arrests, resulting in

film coverage of both doctors, handcuffed, being taken from their offices." A photograph of Dr. Strong being led away, his arms handcuffed behind his back, appeared in the news article together with his full name and address and the name and address of another physician also arrested that day. The evening *Atlanta Journal* article about the two arrests also showed Dr. Strong handcuffed and being led away. The *Journal* reported: "The thin, tall, graying and bespectacled Strong, who is white, was led handcuffed from his office amid whirring television cameras and a troop of reporters."

Far from denying the state's involvement, the Director of the Investigative Division of the GBI testified that he, personally, notified the newspapers and the radio and television stations of the time, place and target of the impending arrests, and made, at least in substance, the following remarks reported by the media with the report of the arrest: "We have been very unpleasantly surprised over the past two or three years to find that a considerable number of medical practitioners seem to be involved in very unethical and criminal behavior."

Some courts confronted with a motion to dismiss the indictment based on alleged prosecutorial misconduct in the releasing of information to the news media have disposed of the issues by holding that the defendant failed to carry the heavy burden of proof necessary to establish the government's involvement. United States v. Kahaner, 204 FSupp. 921 (SDNY 1962), affd. 317 F2d 459, cert. den. 375 U. S. 836. Dr. Strong quite obviously has carried that burden. Other courts have concluded that under the facts of the particular case dismissal of the indictment is far too severe a sanction. United States v. Tallant, 407 FSupp. 878 (ND Ga. 1975); United States v. Archer, 355 FSupp. 981 (SDNY 1972) and United States v. Hoffa, 205 FSupp. 710 (SD Fla. 1962). This court joins in the latter view. Other sanctions are available to protect an accused from damaging publicity. *Mooney v. State,* 243 Ga. 373, 385 (254 SE2d 337) (1979); *Brooks v. State,* 244 Ga. 574 (261 SE2d 379) (1979). It was not error for the trial court to deny the motion to dismiss the indictment.

6. Dr. Strong next contends that the indictment should be dismissed because the investigation of his activities was conducted and his arrest was accomplished by the Georgia Bureau of Investigation (GBI) rather than by the State Board of Pharmacy and the Georgia Drugs and Narcotics Agency (GDNA). More precisely, Dr. Strong's contention is that where, as in the present case, a registered medical practitioner licensed by the Pharmacy Board to prescribe controlled substances is accused of prescribing a controlled substance while acting in the usual course of his professional practice, and the question presented is one of whether or not he loses the

medical exemption provided by Code Ann. § 79A-820 (f) because it is alleged that he prescribed the controlled substance for other than a "legitimate medical purpose," then the Pharmacy Board and the GDNA, not the GBI, should investigate the charges. He concedes that if a medical doctor sells drugs on a street corner he is just as liable to arrest by the GBI as any other citizen.

The functions of the Georgia State Board of Pharmacy relating to investigation of alleged violations under Code Ann. § 79A-208 (f), et seq., were transferred in 1972 to the Department of Public Safety and assigned to the Division of Investigation, except that the Board of Pharmacy retained its investigative functions "related to or in connection with, persons or firms licensed by the Georgia State Board of Pharmacy, or otherwise authorized by Georgia laws to manufacture, sell, distribute, dispense or possess drugs, medicines, poisons..." Code Ann. §§ 40-3521 through 40-3523. Dr. Strong urges that the powers of the GBI are limited, conditioned, and conferred by law (Code Ann. §§ 92A-239, 92A-241, 92A-242, 92A-243, 92A-306.1) and that agents of the GDNA are the ones who have arrest power regarding violations of the criminal law relating to controlled substances. Code Ann. § 79A-302. The state correctly points out that the latter section gives GDNA agents the "power that sheriffs possess to make arrests of any persons violating or charged with violating" controlled substances laws. Hence, the state contends that the authority of the GDNA is not exclusive.

The question of whether or not the GBI has authority to make arrests under the facts of this particular case need not be decided because even if the arrest of Dr. Strong by the GBI agents was illegal, this, alone, affords no cause for dismissal of the indictment. *Chandler v. State,* 138 Ga. App. 128, 129 (2) (225 SE2d 726) (1976); *Gibbs v. State,* 132 Ga. App. 886, 887 (2) (209 SE2d 691) (1974).

7. Dr. Strong is a registered medical practitioner licensed by the Pharmacy Board to prescribe controlled substances while acting in the usual course of his professional practice provided that the prescribing of such controlled substances is for a legitimate medical purpose. Code Ann. § 79A-820 (f). The only controverted fact in the present case apparently is whether or not the prescriptions he wrote for GBI agents were written for "a legitimate medical purpose." Dr. Strong contends that the General Assembly has provided that this medical question shall be referred by the investigating officers to the Pharmacy Board rather than directly to the district attorney. He contends that if the investigating officers are given by the laws of Georgia a choice as to whether to take the case to the Pharmacy Board or, instead, directly to the district attorney, then the statutory scheme denys him equal protection of the laws because he was denied

evaluation of his conduct by the Pharmacy Board.

The statutes he cites do not require pre-indictment review by the Pharmacy Board of the question of whether or not the subject prescriptions were for "a legitimate medical purpose." Code Ann. §§ 79A-820 (f), 79A-303. The proper route for the commencement of criminal proceedings was for the arresting officers to refer the matter directly to the district attorney. There being no different treatment for some persons in Dr. Strong's circumstances, the equal protection clause is not implicated.

8. Another fundamental problem overshadows the prosecution of Dr. Strong. Dr. Strong contends that the Georgia Controlled Substances Act squarely and incontestably places the burden of proof upon him to establish that the prescriptions were written for "a legitimate medical purpose." "It is not necessary for the State to negate any exemption or exceptions in this Chapter in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under this Chapter. The burden of proof is upon the person claiming it." Code Ann. § 79A-829 (a). This statute therefore is burden-shifting, as distinguished from burden-reducing, in its effect. *Simmons v. State,* 246 Ga. 390 (1980).

The simplest way to avoid the issue of whether or not a charge in accordance with Code Ann § 79A-829 (a) is *impermissibly* burden-shifting is for the State to ask the trial court *not* to give the jury the provisions of Code Ann. § 79A-829 (a) during the court's charge. This court suggested this approach back in 1976. *State v. Moore,* 237 Ga. 269 (227 SE2d 241) (1976). Some trial court judges have heeded this suggestion, thereby obviating any possibility of harmful error. *Simmons v. State,* supra. However, in the present case the State wishes to press the issue, contending that a distinctly similar statute was held to be constitutional in *Woods v. State,* 233 Ga. 347 (211 SE2d 300) (1974). If grant of the application for interlocutory appeal is to serve the principle of judicial economy, the issue now should be reached. Accordingly, we hold that Code Ann. § 79A-829 (a) is not unconstitutional *upon its face. Simmons v. State,* supra; *Woods v. State,* supra. However, under the principles carefully enunciated in Patterson v. New York, 432 U. S. 197 (97 SC 2319, 53 LE2d 281) (1977), Code Ann. § 79A-829 (a) would be *un-constitutionally applied* in the present case if the trial court were to charge that it requires Dr. Strong to prove that his medical prescriptions were written for "a legitimate medical purpose" within the meaning of Code Ann. § 79A-820 (f), rather than charging that the State was required to prove beyond a reasonable doubt those allegations of the indictment. The State need not disprove beyond a reasonable doubt every fact constituting any and all affirmative

defenses related to the culpability of an accused. 432 U. S. at 210; *Simmons v. State,* supra. However, "[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." 432 U. S. at 210.

In the present case, each count of the indictment charges Dr. Strong with having unlawfully prescribed a controlled substance for a certain person, "said controlled substance not being prescribed for a legitimate medical purpose." To prove the offense set forth in Code Ann. § 79A-820 (f) and the indictment as laid, the State would have to prove that the prescription was *not* "for a legitimate medical purpose." In the present case, the question of "legitimate medical purpose" apparently is the *only* controverted element of the State's proof. By shifting the burden of proof of this sole controverted element of the offense to Dr. Strong, the principles of Patterson clearly would be violated.

The solution is simple: If Dr. Strong is brought to trial, the trial court should avoid giving a burden-shifting charge. *State v. Moore,* supra.

*Judgment affirmed. All the Justices concur.*

ARGUED SEPTEMBER 9, 1980 — DECIDED OCTOBER 8, 1980 — REHEARING DENIED OCTOBER 31, 1980.

*Meals & McLaughlin, Robert N. Meals, A. Lee Parks, Jr.,* for appellant.

*Lewis R. Slaton, District Attorney, Gordon Miller, Margaret V. Lines, Joseph J. Drolet, Assistant District Attorneys, Arthur K. Bolton, Attorney General,* for appellee.