## S16A0996. HUFF v. THE STATE.
(792 SE2d 368)

BLACKWELL, Justice.

Ernest Airokhai Huff was tried by a Gwinnett County jury, and he was convicted of the murders of James Isaac, Ferris Weston, and Brian White, as well as conspiracy to traffic in cocaine. Huff appeals, asserting that the trial court erred when it denied his motion to suppress his custodial statement, that the trial court erred when it admitted certain evidence at trial, and that he was denied the

---

effective assistance of counsel. Upon our review of the record and briefs, we see no error, and we affirm.[1]

1. Viewed in the light most favorable to the verdict, the evidence shows that Isaac and White traveled from Virginia to Georgia, where they hoped to purchase a sizeable quantity of cocaine. Weston put them in touch with Huff and Theron Deushon Green, and the men eventually agreed to meet on the afternoon of February 29, 2012 at an abandoned apartment near Lawrenceville, ostensibly for the purchase and sale of cocaine. Huff and Green, however, had other plans, which they shared with an acquaintance. Huff and Green intended to rob Isaac, White, and Weston, and they contemplated the use of an AK-47 rifle in connection with the robbery.

Several neighbors saw Huff in and around the abandoned apartment on February 29. One observed Huff with a gun, and another saw him installing blinds in the apartment. Another neighbor noticed Huff (accompanied by some other men) drive by the apartment, call out to a teenager, and recruit the teenager to stand near the apartment and keep watch. Around 5:30 on the afternoon of February 29, neighbors heard multiple gunshots from the apartment, and they saw a man — who resembled Huff — running from the scene.

Police officers arrived at the apartment shortly thereafter, where they found the bodies of Isaac, Weston, and White. Each had sustained multiple gunshot wounds. The officers found shell casings at the scene that were consistent with shots fired from an AK-47 rifle. In Huff's home, investigators would later discover Wolf-brand 7.62 x 39 millimeter ammunition that also was consistent with the shell casings found at the scene.

Telephone call records showed multiple calls from Huff to Weston on the day of the murders. Huff was arrested a few weeks later, and

---

[1] Isaac, Weston, and White were killed on February 29, 2012. A grand jury indicted Huff, Theron Deushon Green, and James Lanier on May 9, 2012, and they were charged with three counts of malice murder, six counts of felony murder, three counts of aggravated assault, and conspiracy to traffic in cocaine. In addition, Huff alone was charged with two counts of the unlawful possession of a firearm by a convicted felon (both of which were later dismissed by nolle prosequi) and a single count of marijuana possession. The charges against Lanier were dismissed before Huff's trial. Huff was tried alone, beginning on June 23, 2014. The jury returned its verdict on June 30, finding Huff not guilty of the three aggravated assaults and the marijuana possession and guilty of the remaining charges. On July 7, 2014, Huff was sentenced to consecutive terms of life imprisonment without parole for each of the three malice murders and imprisonment for a concurrent term of ten years for conspiracy to traffic in cocaine. The felony murders were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Huff timely filed a motion for new trial on July 21, 2014, and he amended it on April 15, 2015, May 5, 2015, and September 3, 2015. The trial court denied his motion on October 15, 2015, and Huff timely filed a notice of appeal on October 22, 2015. His appeal was docketed in this Court for the April 2016 term and submitted for decision on the briefs.

he gave a statement to investigators. In that statement, Huff admitted that he had spoken with Weston on the day of the murders, but he claimed that he did so only to put Weston in touch with Green. Huff later testified at trial, where he disavowed any involvement with a drug deal or the murders, and where he claimed that Green had borrowed his phone on the afternoon of February 29.

Huff does not dispute that the evidence is sufficient to sustain his convictions. Nevertheless, it is the practice of this Court in murder cases to review the evidence for legal sufficiency, even when the defendant does not complain about it. We have done so in this case, and we conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Huff was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Before trial, Huff moved to suppress the custodial statement that he gave to investigators. According to Huff, the investigators made several comments — about Huff being present "for his children as they grew up" and that "the truth will set you free" — implying that Huff would be free to see his children if he admitted his involvement in the crimes. According to Huff, these comments generated a hope of benefit, which improperly induced him to give the statement. See OCGA § 24-8-824 (confession is inadmissible if it was "induced by another by the slightest hope of benefit"). In addition, Huff asserted that he gave at least part of his statement only after invoking his right to remain silent. Following a *Jackson-Denno* hearing,[2] the trial court found that Huff was not offered an improper hope of benefit and that he failed to unequivocally assert his right to remain silent, and upon these grounds, the trial court denied his motion to suppress. Huff now enumerates the denial of his motion to suppress as error.

For the purposes of OCGA § 24-8-824, a "hope of benefit" refers to "promises related to reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all." *State v. Chulpayev*, 296 Ga. 764, 771 (2) (770 SE2d 808) (2015) (citations and punctuation omitted).[3] Encouragement or admonitions to tell the truth will not invalidate a confession. See *State v. Roberts*, 273 Ga. 514, 516 (3) (543 SE2d 725) (2001) (statement that " '[t]he truth will set you free' " was not an improper hope of benefit), overruled on other grounds by

---

[2] See *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

[3] Like this case, *Chulpayev* was decided under the new Evidence Code. In that decision, we noted that OCGA § 24-8-824 is substantially identical to former OCGA § 24-3-50, which was a part of our old Evidence Code. Id. at 771 (2).

*Vergara v. State*, 283 Ga. 175, 178 (1) (657 SE2d 863) (2008). And the trial court did not clearly err when it found that no improper hope of benefit was raised by the statement about Huff being present "for his children as they grew up." See *Finley v. State*, 298 Ga. 451, 453 (3) (782 SE2d 651) (2016) (statement that " '(y)our quickest way to get (to see your children) . . . or your quickest way to take a large load off your shoulders, is just to tell the truth' " did not offer an improper hope of benefit). Having reviewed the recording of the interview in which Huff gave his statement, we conclude that it supports the trial court's finding that, under the totality of the circumstances, Huff's statement was not induced by a promise of reduced criminal punishment, and he was, therefore, not offered an improper benefit under OCGA § 24-8-824.

As to Huff's claim that he asserted his right to remain silent, the recording of the interrogation shows that, every time Huff made a statement that hinted at a desire to end the interrogation (by saying, for instance, that he would "rather do this in court"), Huff nevertheless continued talking to the investigators without additional prompting. His isolated statements expressing some degree of displeasure with the interrogation must be viewed in context, and we conclude that the trial court's finding that Huff did not unequivocally assert his right to remain silent is not erroneous. See *Williams v. State*, 290 Ga. 418, 420 (2) (721 SE2d 883) (2012) ("we agree with the trial court that appellant's statement 'I can't go on answering these questions' was not an unambiguous and unequivocal assertion of the right to remain silent").

3. Huff contends that the trial court erred when it admitted the testimony of his probation officer, who testified about a phone number that Huff had given to the officer. That number linked Huff to the phone from which numerous calls were placed to Weston on the day of the murders. Huff argues, however, that the State could have used other evidence to connect him to the phone, and that the testimony of his probation officer was unfairly prejudicial, inasmuch as it informed the jury that he was on probation. For that reason, he says, the trial court should have excluded the testimony of the probation officer under OCGA § 24-4-403, which provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." We disagree.

First, the testimony of the probation officer was clearly relevant. See OCGA § 24-4-401. Moreover, it had substantial probative value. Connecting Huff to the phone from which calls were placed to Weston was an important part of the prosecution's case, and although Huff

identifies some other evidence in the record that tends to establish that connection, none of it establishes a connection as directly or strongly as the testimony of the probation officer.[4] See *Olds v. State*, 299 Ga. 65, 76 (2) (786 SE2d 633) (2016) ("[p]robative value refers to the strength of the connection between the evidence and what it is offered to prove") (punctuation and footnote omitted). As for prejudice, we note that other evidence informed the jury that Huff was on probation, and in any event, the probation officer did not tell the jury about the crimes for which Huff was on probation. The trial court found that the probative value of the probation officer's testimony was not substantially outweighed by its prejudicial effect, and that finding was no abuse of discretion. See *Moss v. State*, 298 Ga. 613, 618 (5) (b) (783 SE2d 652) (2016) (a trial court has "considerable discretion in determining whether the potential for prejudice substantially outweighed any probative value").

4. Huff claims that he was denied the effective assistance of counsel at trial. To prevail on a claim of ineffective assistance, Huff must prove both that the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Huff must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Huff must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B). See also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see *Kimmelman*, 477 U. S. at 382 (II) (C), and we conclude that Huff has failed to carry it.

First, Huff contends that his trial lawyer should have called Brandon Ennis as a defense witness. According to Huff, Ennis would have impeached the testimony of the neighbor who claimed that — on

---

[4] A custodian of records for MetroPCS testified about the phone number, but he was unable to directly connect the number to Huff because the subscriber name on the account was "Money Earn." In his statement to investigators, Huff admitted to his use of that phone number, but importantly, he denied that he was using the phone in question *at the time of the murders*. The testimony of the probation officer not only established that Huff used the number, but also that he had reported using the number prior to the murders.

the day of the murders — Huff rode by in a car with several other men and recruited a teenager to stand near the apartment and keep watch. Ennis testified at the hearing on Huff's motion for new trial, and in his testimony, Ennis agreed that a car drove by the apartment and that the teenager was recruited to keep watch. On direct examination, Ennis added that he was "100 percent sure" that Huff was not in the car at the time. On cross-examination, however, Ennis reconsidered his earlier testimony and said that Huff "may have been in the car" after all. Given his inconsistent and equivocal testimony at the hearing on the motion for new trial, the failure of counsel to call Ennis as a witness at trial was not deficient performance. See *Washington v. State*, 294 Ga. 560, 566 (3) (755 SE2d 160) (2014).

Huff also contends that his trial counsel was ineffective because he failed to object to testimony for which, Huff says, the State had not laid a proper foundation. But the record shows that — when a police investigator sought to testify about the commonality of the brand and caliber of the bullets found in Huff's home — Huff's lawyer *did* object on the ground that a proper foundation had not been laid. At that point, the investigator testified about his training and experience as a law enforcement officer and showed that he had been exposed to different types of ammunition in "thousands" of cases. As a result, the record does not support Huff's claim that his lawyer's performance was deficient.

Finally, Huff claims that his lawyer should have objected to the way in which the trial court answered a question from the jury about its deliberations on felony murder. But even if the lawyer ought to have objected, Huff suffered no prejudice because Huff was convicted of malice murder, and the guilty verdicts on felony murder were vacated by operation of law. See footnote 1, supra. Huff has not shown that he was denied the effective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 17, 2016.

*David West & Associates, David S. West*, for appellant.

*Daniel J. Porter, District Attorney, Christopher M. Quinn, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General*, for appellee.