306 Ga. 315
FINAL COPY

S18G0976. BUDHANI v. THE STATE.

WARREN, Justice.

In 2014, Mahemood Budhani was convicted of possessing and selling XLR11, a Schedule I Controlled Substance. Budhani appealed his convictions to the Court of Appeals, claiming (among other things) that the indictment was void and that his statements to police were involuntary and therefore should not have been admitted at trial. The Court of Appeals rejected Budhani's claims and affirmed his convictions. *Budhani v. State*, 345 Ga. App. 34 (812 SE2d 105) (2018), overruled on other grounds by *Willis v. State*, 304 Ga. 686, 706 n.3 (820 SE2d 640) (2018). We granted certiorari to consider (1) whether the Court of Appeals erred in holding that the indictment was not fatally defective; and (2) whether a promise of no additional charges constitutes a "slightest hope of benefit" under OCGA § 24-8-824. For the reasons that follow, we affirm — but for reasons that differ from those offered by the Court of Appeals.

Specifically, we hold that (1) Budhani's indictment was not void and (2) a promise made by law enforcement to bring no additional charges against a defendant does constitute the "slightest hope of benefit" under OCGA § 24-8-824, although such a promise may not always render a subsequent confession inadmissible. We further conclude that although investigators' promises of no additional charges during Budhani's recorded, custodial interview constituted a hope of benefit under OCGA § 24-8-824, any error the trial court made by admitting the portions of Budhani's interview after investigators' promises of no additional charges was harmless based on the record in this case.

The record here shows that Mahemood Budhani worked as a cashier at a gas station in Newton County, Georgia. In late 2014, law enforcement officers arranged three controlled buys of XLR11, a type of synthetic marijuana, from Budhani at the gas station.[1] For

---

[1] Law enforcement conducted controlled buys on October 18, 2014, October 24, 2014, and December 12, 2014. The scientific name for the drug more commonly known as "XLR11" is [1-(5-fluoropentyl)indole-3yl]-(2,2,3,3-tetramethylcyclo-propyl) methanone. Former OCGA § 16-13-25 (12) (N).

2

each purchase, investigators met with an informant at a pre-designated location to provide audio and video surveillance equipment, thus allowing investigators to listen to the transactions in real time and review the video recordings thereafter. Investigators also provided the informant with cash to purchase the XLR11 and recorded the serial numbers of the bills they provided. The informant then drove to the gas station on each date and purchased XLR11 from Budhani with the cash provided, all while under surveillance by investigators. After each sale, the informant met investigators at the same pre-designated location and turned over the packets of XLR11 purchased from Budhani. On the same date as the last sale, officers obtained and executed a warrant to search the gas station. During the search, they seized additional packets of XLR11, at least some of which were labeled "not for human consumption." They also arrested Budhani, who had marked bills from the last controlled buy in his pocket and several hundred dollars in cash behind the counter and in his vehicle.

After law enforcement transported Budhani to the police

3

station, and after being advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (86 SCt 1602, 16 LE2d 694) (1966), Budhani waived his rights and spoke with Investigators Al Miller and Mike Tinsley in a recorded interview. In the interview, Budhani immediately admitted to selling "the synthetic" for "like a couple weeks," then said he started selling "two, three weeks ago." After being pressed further by the investigators, who indicated that they had been investigating him for about two months, Budhani admitted that it had been "like month, three weeks, month." Because investigators had been monitoring Budhani for almost two months before the interview, they conveyed to Budhani that they knew he was being dishonest about how long he had been selling.[2] In continued efforts to convince Budhani to admit with accuracy how long he had been selling XLR11, investigators then said, "[i]f you said, Lieutenant Miller, I've been selling for five years . . . Just, there aren't any more charges . . . What you're charged with now . . . [i]s

_____

[2] Police conducted the first controlled buy on October 18, 2014; police interviewed Budhani on December 12, 2014, the same day as the last controlled buy.

4

what you're charged with . . . I'm not going back and charging you."

Budhani continued to claim that he had started selling "not even like weeks [ago]," and after investigators again told Budhani that they knew "for a fact" that he had been selling for longer than a couple of weeks, Budhani said that he had been selling for "a month, maybe longer," and then responded "Yeah," when asked if it had been "[l]onger than a month."  Shortly afterward, Investigator Tinsley again told Budhani to be honest and said, "there aren't any more charges coming.  If you was to say I've been selling for ten years . . . . You're not going to get any more charges, okay."  Investigators continued, "we've got to prove you a credible person here . . . we can't sit here and promise you a hope or give you a hint that you're going to get out . . . . But we want people to be honest with us, and tell us the truth about stuff."  After being asked again when he started selling, Budhani responded, "I just started maybe month, couple month, okay.  That's the most you know.  The longest . . . . Longest, maybe now a couple months."  Investigators told Budhani that if he said he had "been doing that for six months[,] if that's what the truth

is then tell us. We're not giving you more charges . . . I'm not going to charge with it." Budhani then claimed that he had been selling "[j]ust a month, month and a half . . . . Most longest was two months maybe." The investigators, apparently unsatisfied with that answer, ended the interview.

Budhani was thereafter indicted for three counts of unlawful sale of a Schedule I Controlled Substance, XLR11, in violation of OCGA § 16-13-30 (b), and one count of unlawful possession of a Schedule I Controlled Substance with the intent to distribute in violation of OCGA § 16-13-30 (b). At trial, the State played video recordings of the three controlled buys and the video recording of the interview for the jury. The parties stipulated that the contents of the seized packets were submitted to the Georgia Bureau of Investigation (GBI) for scientific evaluation, and that a GBI expert in forensic chemistry found that each packet contained a substance identified as XLR11. Investigators and the confidential informant testified at trial and identified Budhani as the person who sold XLR11 to the informant on the dates of the controlled buys as

6

alleged and as depicted in the video recordings. The jury found Budhani guilty of all four counts for which he was indicted. Budhani appealed to the Court of Appeals, which affirmed his convictions. *Budhani*, 345 Ga. App. at 34.

1. *Did the Court of Appeals err in holding that the indictment was not fatally defective?*

(a) At trial, Budhani argued in an oral demurrer that the indictment was void because it failed to allege all essential elements of the crime, and therefore did not allege a crime at all, because the possession or sale of XLR11 is not per se illegal. He argues the same on appeal.

Budhani was indicted for three counts of Sale of a Schedule I Controlled Substance. Each of those three counts alleged that Budhani did "unlawfully sell [1-(5-fluoropentyl)indole-3yl]-(2,2,3,3-tetramethylcyclo-propyl) methanone (XLR11), a Schedule I

7

Controlled Substance, in violation of OCGA § 16-13-30 (b)."[3] He was also indicted for one count of possession with intent to distribute; that count alleged that Budhani "did unlawfully possess with the intent to distribute [1-(5-fluoropentyl)indole-3yl]-(2,2,3,3-tetramethylcyclo-propyl) methanone (XLR11), a Schedule I Controlled Substance, in violation of OCGA § 16-13-30 (b)."

OCGA § 16-13-30 (b) prohibits (among other things) possession and manufacturing of controlled substances and provides that "[e]xcept as authorized by this article, it is unlawful for any person to manufacture, deliver, distribute, dispense, administer, sell, or possess with intent to distribute any controlled substance." OCGA § 16-13-25, in turn, lists Schedule I controlled substances, and at the time of Budhani's trial provided:

> The controlled substances listed in this Code section are included in Schedule 1:
>
> . . .
>
> (12) Any of the following compounds, derivatives, their salts, isomers, and salts of isomers, halogen analogues, or

---

[3] Counts 1, 2, and 3 are identical except for the dates of the crimes, which correspond with the dates of the controlled buys.

8

homologues, *unless specifically utilized as part of the manufacturing process by a commercial industry of a substance or material not intended for human ingestion or consumption, as a prescription administered under medical supervision, or research at a recognized institution*, whenever the existence of these salts, isomers, and salts of isomers, halogen analogues, or homologues is possible within the specific chemical designation:

. . .

(N)[1-(5-fluoropentyl)indole-3yl]-(2,2,3,3 tetramethylcyclopropyl) methanone (XLR11).

OCGA § 16-13-25 (12) (N) (2014) (emphasis supplied).

This Court "'review(s) a trial court's ruling on a general . . . demurrer de novo in order to determine whether the allegations in the indictment are legally sufficient.'" *State v. Cohen*, 302 Ga. 616, 618 (807 SE2d 861) (2017) (citation omitted). "A general demurrer challenges the sufficiency of the substance of the indictment," and asks whether it is capable of "supporting a conviction." *Kimbrough v. State*, 300 Ga. 878, 880-881 (799 SE2d 229) (2017) (citation and punctuation omitted). These principles are "founded upon the constitutional guaranty of due process . . . [which]

9

requires that the indictment on which a defendant is convicted contain all the essential elements of the crime" or "allege the facts necessary to establish a violation of a criminal statute" so that the accused is put "on notice of the crimes with which he is charged and against which he must defend." *Jackson v. State*, 301 Ga. 137, 139-141 (800 SE2d 356) (2017) (citation and punctuation omitted). An indictment, therefore, "is void to the extent that it fails to allege all the essential elements of the crime or crimes charged." *Henderson v. Hames*, 287 Ga. 534, 538 (697 SE2d 798) (2010). On the other hand, "[a] valid indictment uses the language of the statute, including the essential elements of the offense, and is sufficiently definite to advise the accused of what he must be prepared to confront." *Jackson*, 301 Ga. at 141 (citation and punctuation omitted). To that end, the most helpful way to assess whether an indictment withstands a general demurrer is to ask "[i]f the accused could admit each and every fact alleged in the indictment and still be innocent of any crime." *Kimbrough*, 300 Ga. at 880. If so, "the indictment is subject to a general demurrer." Id. "If, however, the

10

admission of the facts alleged would lead necessarily to the conclusion that the accused is guilty of a crime, the indictment is sufficient to withstand a general demurrer."  Id.

(b) To determine whether the charges in Budhani's indictment were sufficient to withstand a general demurrer, we look to the indictment and to the statutory scheme under which he was charged.  As described above, the indictment alleged in three counts that Budhani did "unlawfully sell [1-(5-fluoropentyl)indole-3yl]-(2,2,3,3-tetramethylcyclo-propyl) methanone (XLR11), a Schedule I Controlled Substance, in violation of OCGA § 16-13-30 (b)"  and in one count that he "did unlawfully possess with the intent to distribute    [1-(5-fluoropentyl)indole-3yl]-(2,2,3,3-tetramethylcyclo-propyl) methanone (XLR11), a Schedule I Controlled Substance, in violation of OCGA § 16-13-30 (b)."  Each of these four counts cited and tracked the language of the relevant statute, OCGA § 16-13-30 (b).  They also identified XLR11 — by both its common and scientific names listed in former OCGA § 16-13-25 (12) (N) — as the "Schedule I Controlled Substance" that Budhani unlawfully possessed and

11

sold.

The indictment withstands a general demurrer and satisfies due process here because it alleges the essential elements of the offenses — that Budhani sold, or possessed with intent to distribute, a specific Schedule I controlled substance — under OCGA § 16-13-30 (b), and put Budhani "on notice of the crimes with which he is charged and against which he must defend." *Jackson*, 301 Ga. at 141. Put simply, if Budhani admitted to the allegations contained in each of the four counts of the indictment, "the admission of the facts alleged would lead necessarily to the conclusion that the accused is guilty of a crime." *Kimbrough*, 300 Ga. at 880. That is because Budhani would have to admit to "sell[ing]" or "possess[ing] with intent to distribute [XLR11], a Schedule I Controlled Substanc[e], in violation of O.C.G.A. 16-13-30 (b)," and XLR11 was, at the relevant time, included in OCGA § 16-13-25 as a Schedule I controlled substance. See former OCGA § 16-13-25 (12) (N).

Budhani contends this is not so, because it is not illegal to possess or sell XLR11 in all circumstances. Arguing that the three

exceptions contained in OCGA § 16-13-25 (12) are themselves "material element[s]" of the charged offenses, and that the State must allege in the indictment that the exceptions do not apply, Budhani contends that the indictment is void here because the State did not allege that the XLR11 at issue was "intended for human consumption."

But a plain reading of the indictment, particularly against the statutory backdrop of OCGA §§ 16-13-25 and 16-13-30 (b), shows that Budhani's argument fails. To begin, OCGA § 16-13-25 creates a default presumption that the controlled substances listed in subsection 12 "are included in Schedule I." Thus, by specifically naming in the indictment a substance listed in former OCGA § 16-13-25 (12) (N), and by alleging that it is "a Schedule I Controlled Substance," the indictment necessarily alleges that Budhani possessed and sold a Schedule I controlled substance to which an exception to OCGA § 16-13-25 (12) did not apply. Indeed, if an exception to OCGA § 16-13-25 (12) *did* apply, then the "unless" clause in OCGA § 16-13-25 (12) would exempt the substance from

13

the list of controlled substances "included in Schedule I." See OCGA § 16-13-25 (12) ("The controlled substances listed in this Code section are included in Schedule I: . . . Any of the following . . . *unless* specifically utilized as part of the manufacturing process by a commercial industry of a substance or material not intended for human ingestion or consumption, as a prescription administered under medical supervision, or research at a recognized institution[.]") (emphasis supplied). Because the indictment specifically named XLR11 and characterized it as a Schedule I controlled substance, Budhani cannot admit to the allegations in the indictment and be innocent of the crimes for which he was charged. The indictment in this case is thus unlike the one in *Jackson*, where we held that an indictment that cited a "multi-part" statute without specifying the subpart under which the defendant was charged did not withstand a general demurrer because it neither "inform[ed] the accused of what alleged action or inaction would constitute a violation" of, nor "recite[d] a sufficient portion of the statute to set out all the elements of the offense." See *Jackson*, 301 Ga. at 139, 142.

14

In other words, the indictment here alleged more than just a code section or a broad, multi-part statute; it recited the language of the statute that sets out the elements of the charged offenses and alleged the facts necessary to establish a violation of the relevant statutes. Id.

(c) Moreover, Budhani's argument also fails because OCGA § 16-13-50 (a) confirms that the exceptions listed in OCGA § 16-13-25 (12) are affirmative defenses — not elements of the crime — and, as a result, the State is not required to allege them in the indictment.[4] To that end, OCGA § 16-13-50 (a), which sets out the burden of proof for exceptions and exemptions contained in the Controlled Substances Act, provides in pertinent part that "[i]t is not necessary for the state to negate *any exemption or exception* in this article *in any complaint, accusation, indictment, or other pleading* or in any trial, hearing, or other proceeding under this article." Id.

---

[4] We note that the parties did not argue for the application of OCGA § 16-13-50 in the trial court, and that the Court of Appeals did not reference that statute in its opinion.

15

(emphasis supplied). It further provides that "[t]he burden of proof of any exemption or exception is upon the person claiming it."[5]  Id. The phrase "this article" references Article 2 of Chapter 13 in Title 16 (the Georgia Controlled Substances Act), which contains the two Code sections under which Budhani was indicted:  OCGA §§ 16-13-25 and 16-13-30.  Thus, OCGA § 16-13-50 plainly provides that where, as here, an indictment is brought under the Controlled Substances Act, the State is not required to allege in the indictment applicable statutory exceptions to the crimes charged.

---

[5] We interpret the current and prior versions of OCGA § 16-13-50 as shifting only the burden of *production* to a defendant.  That burden is distinct from the burden of *persuasion* on an element of an offense, which — if shifted to a defendant — could be unconstitutional.  See *Strong v. State*, 246 Ga. 612, 616 (272 SE2d 281) (1980) (holding that a prior, but substantively similar, version of OCGA § 16-13-50 was not facially unconstitutional but could be unconstitutional as applied if the trial court used it to shift the burden of persuasion of an element of the crime to the defendant); *Adams v. State*, 288 Ga. 695, 697 (707 SE2d 359) (2011) ("The responsibility of producing evidence of an affirmative defense and the burden of persuasion by proof beyond a reasonable doubt are two distinct and separate concepts.  The first is placed squarely on the defendant unless the state's evidence raised the issue." (citation and punctuation omitted)); see also *Sellers v. State*, 182 Ga. App. 277, 278 (355 SE2d 770) (1987) (where defendant met his burden of production by asserting that he had authority to possess a controlled substance, the trial court erred by instructing the jury that the defendant also had the burden of persuasion as to his authority to lawfully possess the controlled substance).

This conclusion finds support in case law. For example, in answering a similar question under the statutory precursor to the Controlled Substances Act, we explained that "whether an individual has a license or is otherwise lawfully permitted to have in his possession narcotic drugs under Title 79A is a matter of defense and not an element of the offense." *Woods v. State*, 233 Ga. 347, 349 (211 SE2d 300) (1974).[6] Similarly, in *May v. State*, the Court of Appeals noted that "the sale of marijuana to a certified patient by a certified pharmacist is a statutory exception to the general prohibition of marijuana sales" and that the "legal capability of certain pharmacists to sell marijuana to certain customers is not an element of the offense of selling marijuana." *May v. State*, 179 Ga. App. 736, 737 (348 SE2d 61) (1986) (citing OCGA § 16-13-30

---

[6] Although *Woods* relies, at least in part, on *Johnson v. State*, 230 Ga. 196, 200 (196 SE2d 385) (1973), and *Ezzard v. State*, 229 Ga. 465, 466 (192 SE2d 374) (1972), which were overruled by *Head v. State*, 235 Ga. 677, 679 (221 SE2d 435) (1975), those cases are distinguishable because *Head* overruled *Johnson* and *Ezzard* seemingly on the ground "that whether an accused has a license to carry a pistol is a matter of defense and is not an element of the offense." 235 Ga. at 678.

17

(b)).[7] In reaching that conclusion, the court rejected May's argument that the indictment charging him with the sale of marijuana was fatally defective because it failed to allege that he "was not a licensed pharmacist and thus legally entitled to sell marijuana under certain conditions" and instead concluded that the statutory exception amounted "to an affirmative defense (OCGA § 16-13-50), with the initial burden of producing evidence to support the affirmative defense resting upon the defendant." Id. See also *Rautenstrauch v. State*, 129 Ga. App. 381, 381 (199 SE2d 613) (1973) (upholding the denial of a general demurrer against an indictment that did not allege statutory exceptions in the precursor to the Controlled Substances Act that allowed certain persons to lawfully possess prohibited drugs because "whether an individual has a license or is otherwise lawfully permitted" to do so "is a matter of defense and not an element").

And this is where the Court of Appeals went astray in this case.

---

[7] We note that the Court of Appeals reached this conclusion even after acknowledging that the appellant's motion was untimely and "not subject to appellate review." *May*, 179 Ga. App. at 737.

18

Indeed, the Court of Appeals erred when it concluded that the exceptions listed in OCGA § 16-13-25 (12) were *not* affirmative defenses because "the statute fail[s] to identify them as affirmative defenses" and because they "do not go to the element of intent." *Budhani*, 345 Ga. App. at 37 n.4. Although we have before said that, generally speaking, an affirmative defense admits the doing of the act charged, "but seeks to justify, excuse, or mitigate it by showing no criminal intent," *Hicks v. State*, 287 Ga. 260, 261-262 (695 SE2d 195) (2010), we have also said that "the definition of 'affirmative defenses' cannot be limited to those which preclude criminal intent, by relying on authority which deals only with those affirmative defenses which are specifically identified as such and listed in OCGA §§ 16-3-20 through 16-3-28." *Adams v. State*, 288 Ga. 695, 697 (707 SE2d 359) (2011). For example, "[o]ther defenses, including age and the statute of limitations, do not preclude criminal intent, are listed in other statutes and may be considered affirmative defenses as well." Id. (citation and punctuation omitted). Moreover, as provided in OCGA § 16-1-3 — which applies to the entirety of Title 16 — "[t]he

19

enumeration in this title of some affirmative defenses shall not be construed as excluding the existence of others." See also, e.g., *Burchett v. State*, 283 Ga. App. 271, 273 (641 SE2d 262) (2007) ("Where certain conduct is generally prohibited, but where a statutory exception permits the conduct under specified circumstances, the exception amounts to an affirmative defense."); *Kitchens v. State*, 116 Ga. 847, 848 (43 SE 256) (1903) (affirming trial court overruling of a demurrer to an indictment alleging the crime of carrying a pistol to an election precinct and noting that "an indictment under a statute like the one involved in the present case need not aver that the accused does not belong to the class of persons to which it was declared the law should not apply").

We therefore conclude that the exceptions enumerated in OCGA § 16-13-25 (12) are affirmative defenses that the State is not required to allege in an indictment.[8] As a result, a criminal

---

[8] Our conclusion reflects the common-sense legislative judgment, reflected in the General Assembly's passage of OCGA § 16-13-50 (a), that the State should not be required to allege the *inapplicability* of statutory exceptions, which in many instances amounts to being required to prove a

20

defendant may raise the three exceptions enumerated in OCGA § 16-13-25 (12) as affirmative defenses at trial, and in so doing would bear the initial burden of coming forth with evidence to support those defenses. *Adams*, 288 Ga. at 697. But whether those affirmative defenses are available at trial is a distinct issue from what the State is required to allege in the indictment, and OCGA § 16-13-50 (a) makes clear that the State was not required to allege in Budhani's indictment the affirmative defenses enumerated in OCGA § 16-13-25 (12). We accordingly affirm the Court of Appeals' holding that the indictment was not void, though we employ different reasoning to reach that conclusion. *Nordahl v. State*, 306 Ga. 15 (829 SE2d 99) (2019) (affirming the Court of Appeals' judgment under the right-for-any-reason doctrine).

2. *Does a promise of no additional charges constitute a "slightest hope of benefit" under OCGA § 24-8-824?*

---

negative. Nonetheless, our holding today does not attempt to announce a categorical rule for all statutory schemes that contain "except" or "unless" clauses.

(a) Before trial, Budhani moved to suppress statements he made to police during his recorded, custodial interview on the basis that investigators' statements that they would not seek additional charges amounted to a hope of benefit under OCGA § 24-8-824. The trial court denied Budhani's motion to suppress, finding that, during the recorded interview, "there were no references to dismissing, reducing, or exonerating [Budhani] of the current charges," though there was a "promise that there would be no *additional* charges if [Budhani] revealed how long he was selling." (Emphasis in original.) On appeal, the Court of Appeals evaluated the investigators' statements from the recorded interview and affirmed the trial court order denying Budhani's motion to suppress, holding (among other things) that Budhani's custodial statement was not involuntary under OCGA § 24-8-824. The Court of Appeals concluded that

> [a]t no point during the audio recorded portion did the officers promise Budhani that the charges would be dropped or that his sentence would be reduced if he talked to them. Rather, they simply told him that they would not

22

charge him with additional crimes if he were to admit to selling drugs for a longer period of time than he initially indicated.

*Budhani,* 345 Ga. App. at 42. We granted certiorari to determine whether a promise of "no additional charges" constitutes a "slightest hope of benefit" under OCGA § 24-8-824.[9]

---

[9] Budhani testified at a hearing held pursuant to *Jackson v. Denno*, 378 U.S. 368 (84 SCt 1774, 12 LE2d 908) (1964), that, in addition to statements *during* the recorded interview that police would not bring additional charges, conversations took place *before* his recorded interview wherein investigators told him that "there would be no charges, like no sentence, less sentence" if Budhani was truthful with law enforcement. Thus, even apart from Budhani's arguments about investigators' statements *during* his recorded interview, he also argued that investigators' various promises of no charges and a lesser sentence *before* the recorded interview amounted to an impermissible hope of benefit and that his statements to police should be suppressed under OCGA § 24-8-824. With respect to the statements investigators allegedly made to Budhani before his recorded interview, the trial court credited testimony from two police officers that they did not discuss the case with Budhani until the recorded interview and discredited Budhani's testimony to the contrary. The Court of Appeals later reviewed and upheld that ruling. *Budhani,* 345 Ga. App. at 42-43. We must accept the trial court's factual findings about the alleged pre-interview statements unless they were clearly erroneous, see, e.g., *Finley v. State*, 298 Ga. 451, 454 (782 SE2d 651) (2016), and — given that the only direct evidence on this point is testimony the trial court heard at the hearing on Budhani's motion to suppress — we cannot say that the credibility determinations the trial court made as a result of that testimony were clearly erroneous. We therefore accept the trial court's factual finding that "there is no evidence to corroborate the allegations made by [Budhani] that he was questioned before the audio recordings began and officers made promises that induced hope of benefit" and review only the statements made during Budhani's recorded interview.

(b) For a confession to be admissible under Georgia law, "'it shall have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury.'" *State v. Chulpayev*, 296 Ga. 764, 771 (770 SE2d 808) (2015) (quoting OCGA § 24-8-824).[10] "It has . . . long been understood that 'slightest hope of benefit' refers to 'promises related to reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all.'" *Chulpayev*, 296 Ga. at 771 (quoting *Brown v. State*, 290 Ga. 865, 868-869 (725 SE2d 320) (2012)). By contrast, this Court has explained that certain other tactics used by law enforcement — such as exhortations or encouragement to tell the truth, conveying the seriousness of the accused's situation, or offering to inform the district attorney about the accused's cooperation while making clear

---

[10] The new Evidence Code carried forward former OCGA § 24-3-50 as OCGA § 24-8-824 without any substantive change, and that Code section does not have a federal counterpart. See *Price v. State*, 305 Ga. 608, 610 n.2 (825 SE2d 178) (2019); see also *Chulpayev,* 296 Ga. at 771 ("[W]here the new Evidence Code contains a provision that is not in the Federal Rules of Evidence and uses language nearly identical to a provision of the old Code, we give the new provision the same meaning as the old one." (citation and punctuation omitted)). For consistency and ease of reference in this opinion, we will call former OCGA § 24-3-50 "prior OCGA § 24-8-824."

that only the district attorney can determine charges and plea deals—do not amount to a hope of benefit. See, e.g., *Huff v. State*, 299 Ga. 801, 803 (792 SE2d 368) (2016) ("Encouragement or admonitions to tell the truth will not invalidate a confession."); *Preston v. State*, 282 Ga. 210, 212 (647 SE2d 260) (2007) (explaining the gravity of the accused's situation not a hope of benefit); *Shepard v. State*, 300 Ga. 167, 170 (794 SE2d 121) (2016) (offering to talk to the district attorney while making clear that only the district attorney can determine charges and plea deals not a hope of benefit). Moreover, "[t]his Court has consistently interpreted the phrase 'slightest hope of benefit' not in the colloquial sense, but as it is understood in the context within the statute[.]" *Price*, 305 Ga. at 610 (citation omitted). That context includes "the Code section that immediately follows" OCGA § 24-8-825, "which says that a promise of a 'collateral benefit' does not render a confession inadmissible." *Brown*, 290 Ga. at 868; OCGA § 24-8-825.[11]

---

[11] OCGA § 24-8-825 provides: "The fact that a confession has been made under a spiritual exhortation, a promise of secrecy, or a promise of collateral benefit shall not exclude it."

However, establishing that law enforcement has promised an impermissible hope of benefit is not itself sufficient to render a defendant's later statements to law enforcement inadmissible. That is because OCGA § 24-8-824 requires that the "slightest hope of benefit" actually "induce[ ]" the defendant's statements. See OCGA § 24-8-824 ("To make a confession admissible, it shall have been made voluntarily, *without being induced* by another by the slightest hope of benefit or remotest fear of injury." (emphasis supplied)); see also *Huff*, 299 Ga. at 804 (concluding that the interview recording supported the trial court's finding that "under the totality of the circumstances, [the defendant's] statement was not induced by a promise of reduced criminal punishment, and he was, therefore, not offered an improper benefit under OCGA § 24-8-824").

In keeping with these precedents, in *Foster v. State* we held that a promise police made to "not press . . . additional charges" against a defendant rendered his confession inadmissible under prior OCGA § 24-8-824. *Foster v. State*, 283 Ga. 484, 488 (660 SE2d 521) (2008). There, in an attempt to obtain information about the

26

location of a murder weapon, detectives executed a document promising the defendant, who was then a murder suspect, that they would "not press . . . any additional charges" related to the murder weapon. Id. at 486-487. The defendant immediately admitted that he had given his co-indictees the murder weapon and revealed its location to detectives. Id. The defendant contended that "two incriminating statements he made during custodial interrogations were involuntary because they were improperly induced by hope of benefit." Id. at 485. We held that the defendant's confession was "involuntary and inadmissible under" prior OCGA § 24-8-824, reasoning that because the defendant's statements were made "after being induced to do so by the written promise of detectives not to press against [defendant] any additional charges related to the weapons," the defendant made the statement with the "hope of receiving no punishment for crimes related to his possession of the weapon." Id. at 488. We further explained that "[j]ust as holding out a hope of benefit in the form of lesser punishment is an impermissible hope of benefit that renders a confession involuntary"

27

under prior OCGA § 24-8-824, "the reward of facing no charges in connection with the weapon" — in other words, no additional charges — "is an impermissible hope of benefit that rendered" defendant's statements involuntary and therefore inadmissible. Id. (citation and punctuation omitted). See also *Chulpayev*, 296 Ga. at 772 (citing *Foster* for the proposition that "a promise not to press additional charges against a defendant was an impermissible hope of benefit rendering his subsequent confession inadmissible").

But in *Sosniak v. State*, we seem to have departed from *Foster* when we held that a detective's statement in a custodial interview that "there would be 'no further charges' regarding 'any drugs or any intent to distribute' was made in the context of encouraging [the defendant] to be truthful regarding his activities leading up to the time of the crimes," rather than as offering a hope of benefit under prior OCGA § 24-8-824. *Sosniak v. State,* 287 Ga. 279, 287 (695 SE2d 604) (2010). There, without citing *Foster*, we evaluated the totality of the circumstances and reasoned that the defendant — who was being interviewed as a murder suspect — was "never

28

promised or [given] hope . . . that he would receive a lighter punishment in exchange for a confession to the crimes with which he was charged." Id.

(c) On appeal, both parties attempt to reconcile *Foster* and *Sosniak*. Budhani argues that our holding in *Foster* controls here, but that *Sosniak* is not incompatible with *Foster* because the promise of no additional charges in *Sosniak*, unlike the promises made here and in *Foster*, pertained to charges that did not "relate to, or have a nexus to, the charge under investigation." The State, for its part, argues that *Sosniak* controls and is not incompatible with *Foster* because the investigators here, like the detective in *Sosniak*, "never promised Appellant that he would receive a lesser punishment or no punishment at all for the charges he was facing." And in any event, the State argues, the investigator's promise here did not induce the statements Budhani sought to suppress.

As an initial matter, we reject the State's argument that *Sosniak* controls the facts of this case. Although investigators made a number of statements during Budhani's recorded interview that

29

did *not* provide a hope of benefit, we cannot say that investigators' comments such as "there aren't anymore charges . . . .  What you're charged with now . . . .  Is what you're charged with . . . I'm not going back and charging you" were anything other than a promise not to bring additional charges — and thus a hope of benefit — if Budhani gave police information about how long he had been selling XLR11. And that information was important, because at the time investigators promised no additional charges, Budhani had admitted to selling XLR11 for at most one month — a length of time that would have covered the third controlled buy, but not the first two.

But we also decline to adopt Budhani's reading of *Sosniak*, which characterizes the promise of "no further charges" on a potential drug-related crime as unrelated to the murder charge for which the defendant was being investigated.  Indeed, that interpretation of *Sosniak* ignores our acknowledgment that the potential drug offenses for which "no further charges" were offered related to the defendant's "activities leading up to the time of the

crimes" for which the defendant was charged. *Sosniak*, 287 Ga. at 287.[12]

In sum, we are not convinced by either party's argument. Even when viewed under the totality of the circumstances pertaining to the hope of benefit offered, see *Huff,* 299 Ga. at 803-804, and *Chulpayev*, 296 Ga. at 779-780, the investigators' statements at issue here, such as there "are no more charges . . . there aren't any more charges," are controlled by our holding in *Foster*. Indeed, the record authorizes the conclusion that just as Foster made statements to police "in the hope of receiving no punishment for crimes related to his possession of the weapon," *Foster*, 283 Ga. at 488, Budhani made statements to police in the hope of minimizing

---

[12] To be fair, our characterization of the potential charges in *Sosniak* was not entirely consistent. On one hand, we noted that the detectives in that case never promised that the defendant "would receive a lighter punishment in exchange for a confession to the crimes *with which he was charged,*" and characterized the potential drug charges that were threatened as not related to the defendant's murder charge. *Sosniak*, 287 Ga. at 287 (emphasis supplied). On the other hand, we acknowledged — as described above — that the potential drug offenses could have led up to (and thus be related to) the murder at issue. Setting aside whether this apparent tension can or should be resolved, we decline to rely on this aspect of *Sosniak* as a legal rule that controls the outcome of this case.

his exposure to further drug charges.  Thus, to the extent *Sosniak* can be read as contravening the rule we announced in *Foster* — including to the extent it can be read for the proposition that a promise of no additional charges does not constitute a hope of benefit if the charges do not directly relate to the crimes for which the defendant has already been charged — it is hereby disapproved.[13]

We therefore conclude that, under the totality of the circumstances here, promises made by law enforcement to bring no additional  charges against Budhani constituted an impermissible hope of benefit under OCGA § 24-8-824.  Accordingly, the Court of Appeals, much like the trial court, erred by characterizing the investigators' recorded statements as "simply [telling Budhani] that [police] would not charge him with additional crimes" in a manner that could not violate OCGA § 24-8-824.  *Budhani*, 345 Ga. App. at 42.

(d) Notwithstanding this error, and even assuming that the

---

[13] Of course, under OCGA § 24-8-825, a promise that is truly collateral will not render a statement or confession inadmissible.

promises investigators made to Budhani did, in fact, induce the statements Budhani sought to suppress, we may conduct a harmless-error review of statements admitted at trial in violation of OCGA § 24-8-824. See *Jackson v. State*, 306 Ga. __, __ (__ SE2d __) (2019) ("The error was evidentiary and not of constitutional dimensions, and the test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (citation and punctuation omitted).[14] Here, overwhelming evidence of Budhani's guilt was presented at trial. That evidence included testimony from the investigators who executed the three controlled buys and from the confidential informant who bought the XLR11 from Budhani; audio and video recordings of the controlled buys; packets of XLR11 seized at the gas station; and marked bills from Budhani's pockets that were used in the last controlled buy. Therefore, although we disagree with the

---

[14] We note that, even assuming that some of Budhani's statements would be inadmissible under OCGA § 24-8-824 because they were induced through a hope of benefit, any statements Budhani made *before* law enforcement offered an impermissible hope of benefit could still be admissible.

Court of Appeals', and the trial court's, failure to acknowledge that the promise of "additional charges" can constitute "hope of benefit" under OCGA § 24-8-824, we conclude that any error the trial court made by admitting the portions of Budhani's recorded, custodial interview after investigators' promises of no additional charges was harmless. See *McKelvin v. State*, 305 Ga. 39, 45 (823 SE2d 729) (2019).

*Judgment affirmed. All the Justices concur.*

Decided June 28, 2019.

Certiorari to the Court of Appeals of Georgia --- 345 Ga. App. 34.

*Brian Steel, Miguel M. Debon*, for appellant.

*Layla H. Zon, District Attorney, Jillian R. Hall, Assistant District Attorney*, for appellee.